[No. 41174. En Banc. May 13, 1971.]

James Kuhnhausen, *Appellant,* v. C. James England, *Defendant,* Oscar K. Will et al., *Respondents.*

*McNair & Barry,* by *Lee R. McNair,* for appellant.
*Malcolm L. Edwards,* for respondents.

McGovern, J.—This is an appeal from a superior court order quashing appellant James Kuhnhausen's writs of attachment and execution upon certain real estate then allegedly owned by C. James England. Respondents Oscar K. Will, Melvin G. Heide, and W. E. Sander, intervenors at the trial level and the real parties of interest on appeal, have filed a motion to dismiss the appeal because of appellant's failure to timely provide this court with a statement of facts.

In 1961, C. James England signed and delivered a promissory note to James Kuhnhausen to evidence a loan of $7,500. England was then single and later, while still single, he purchased an apartment building which required major repairs and remodeling to make it tenantable. England financed some of the renovations through short-term construction loans from a local savings and loan association. During the course of this remodeling England married, and subsequent construction loans were obtained upon promissory notes signed by England and his wife. In January, 1963, the savings and loan association consolidated their financing of the completed project by taking a $105,000 first mortgage on the property. The note and mortgage were executed by both of the Englands.

January 29, 1963, the Englands entered into an earnest money agreement with respondent Will to sell the property for an amount approximating the mortgage and other obligations then owed on the property.

Apparently, the next significant events occurred in the spring of 1964 when the earnest money and escrow instructions for the sale were placed in escrow. At about the same time, Kuhnhausen brought suit on the debt owed to him by England and commenced proceedings to attach the apartment house property prior to trial. Respondents contend that on May 1, 1964, England executed a quitclaim deed of his interest in the property to Will and his business associate, Heide, and placed that deed in escrow with amended instructions.

Appellant Kuhnhausen succeeded in attaching the apart-

ment house property 1 week later. Will and Heide were then in possession. Kuhnhausen subsequently served a writ of garnishment on Will and Heide requiring them to answer in what sums of money, if any, they were indebted to defendant England. Sometime during this period, England received a $21,500 note and mortgage, payable in 1968, from Will and Heide, as partial consideration for the sale of the apartment. England then assigned this note and mortgage to Sander as security for a prior obligation.

March 9, 1965, Kuhnhausen obtained a judgment against England for $12,366. In 1968 he attempted to collect his judgment by proceeding upon his writ of garnishment against the promissory note indebtedness of Will and Heide to England. Will and Heide refused to pay under the writ of garnishment, alleging that their indebtedness to England had been assigned by England to Sander before the writ of garnishment had been served upon them. Kuhnhausen then proceeded to obtain a writ of execution and sale against the apartment building.

Will, Heide and Sander intervened shortly thereafter, obtained a temporary restraining order against the sale of the apartment, and filed a motion to quash the attachment and dismiss the garnishment. Because of the complex factual questions involved in determining the priorities of the parties' interests in the property, a trial was had on the motion.

After hearing much testimony relating to the quitclaim deed, the attachment, and the mortgage assignment, the trial court resolved the case in a manner apparently unanticipated by the parties. The trial court held that the apartment building had been a community asset at the time of the attachment and was thus beyond the reach of Kuhnhausen's lawsuit which was based upon an admittedly separate obligation. The court then permanently restrained the sheriff's sale, released Will and Heide's interest in the property from the attachment lien and garnishment, and quieted title to the note and mortgage in Sander.

A motion for new trial was denied and this appeal followed.

■ Appellant provided this court with a statement of facts 4 days prior to argument and that statement contained only a copy of the trial court's oral opinion and some exhibits. This delay prompted respondents' motion to dismiss the appeal. Although appellant's failure to comply with Rule on Appeal I-34 is inexcusable, the appeal cannot be denied for that reason. We have previously stated that a timely filing of a statement of facts is not a jurisdictional prerequisite to review. *Neal v. Green,* 68 Wn.2d 415, 413 P.2d 339 (1966); *Beagle v. Beagle,* 55 Wn.2d 908, 349 P.2d 241 (1960).

■ Because appellant failed to assign error to the trial court's findings of fact, those findings constitute the established facts for this appeal. *Pier 67, Inc. v. King County,* 71 Wn.2d 92, 426 P.2d 610 (1967); *Hansen v. Walker,* 46 Wn.2d 499, 282 P.2d 829 (1955); Rule on Appeal I-43. That rule is particularly applicable when, as here, it is "impossible for us, by an examination of the testimony and the exhibits, to ferret out to our satisfaction the true facts in this case . . . ." *Beers v. Martin,* 30 Wn.2d 1, 3, 190 P.2d 573 (1948).

■ Our task, then, is to determine whether these findings of fact support the trial court's conclusions of law. *Ebenezer, A.M.E. Zion Church v. Corporate Loan & Sec. Co.,* 72 Wn.2d 128, 432 P.2d 291 (1967); *Hoke v. Stevens-Norton, Inc.,* 60 Wn.2d 775, 375 P.2d 743 (1962).

Appellant submits that conclusion of law 2 is unsupported by the findings and is clearly contrary to the community property law of this state. Conclusion of law 2 reads:

> The real property was the separate property of defendant C. James England at the time he acquired it, which was prior to his marriage to Janet England, but when the permanent mortgage, which had the effect of a purchase money mortgage was executed in January, 1963 by C. James England and Janet England, his wife, said mortgage being upon the credit of the community, constituted this real property to be a community asset as of that day

and that all subsequent transactions relating to the property with third parties had to be transactions with the community.

Kuhnhausen argues that the property never lost its separate character according to the rule of law announced in *In re Estate of Dougherty,* 27 Wn.2d 11, 176 P.2d 335 (1947), and in *In re Estate of Binge,* 5 Wn.2d 446, 105 P.2d 689 (1940), that the character of property is established at the date of acquisition and such character is retained until changed by agreement of the parties or by operation of law. The trial court found that England had "acquired" the property prior to his marriage and therefore concluded that it was his separate property prior to the time he and Mrs. England executed the "take out" or permanent financing mortgage. The court's oral opinion also noted that the proceeds of the construction loans had apparently been utilized solely to improve the apartment building. Cases such as *Dobbins v. Dexter Horton & Co.,* 62 Wash. 423, 113 P. 1088 (1911), *Graves v. Columbia Underwriters,* 93 Wash. 196, 160 P. 436 (1916), *In re Estate of Finn,* 106 Wash. 137, 179 P. 103 (1919), and *Strand v. Pekola,* 18 Wn.2d 164, 138 P.2d 204 (1943) stand for the proposition that the joinder by a husband and wife in executing a mortgage on, or for the benefit of, separate property does not of itself alter the separate character of the mortgaged property. An equitable lien in favor of the community may, however, be impressed against the property in an amount equal to that expended by the community in enhancing the value of the property.

Kuhnhausen thus contends that this separate asset could not be transformed into community property simply by a refinancing of loans for the benefit of the separate property, even though effected through a mortgage executed by the community. We would agree with him and reverse the trial court if we were satisfied that the court meant to accord some extraordinary "transforming" power to that final "take out" or refinancing mortgage. However, the trial court's unchallenged findings of fact suggest that this mortgage involved something more than a mere refinancing of

interim construction loans. Finding of fact 2 described this final mortgage obligation as a take out or *purchase money mortgage* "secured by the marital community . . . through the use of the marital community's credit." And in its conclusion of law 2 the court stated that "the permanent mortgage . . . had the effect of a *purchase money mortgage* . . . said mortgage being upon the credit of the community . . ." (Italics ours.) This precise characterization of the mortgage as a "purchase money" mortgage suggests that it was the culmination of a transaction which involved more than interim construction loans. Apparently the trial court considered the date of this final mortgage as the effective date of acquisition by England and the marital community. If this was the conclusion intended by the trial court, it should have been supported by findings of fact. Otherwise, it would be error to conclude from the facts before us and under our general rules of community property law that this mortgage of itself altered the character of the asset either by agreement of the parties or by operation of law.

For the reasons stated, we remand this case to the Superior Court for King County for further proceedings, including such additional findings of fact as the court may make in support of its stated conclusion that the property in question was a community asset at the date of appellant's attachment. In the alternative, if such findings cannot properly be made, we instruct the trial court to dispose of this cause on the issues initially raised by the parties concerning the relative priorities of their claims to the property and to enter appropriate findings of fact and conclusions of law.

It is so ordered.

HAMILTON, C.J., FINLEY, ROSELLINI, HUNTER, HALE, NEILL, STAFFORD, and WRIGHT, JJ., concur.