[No. 42686. En Banc. October 18, 1973.]

V. C. Edwards Contracting Co., Inc., *Respondent*, v. Port of Tacoma, *Petitioner*, Maryland Casualty Company *et al.*, *Respondents*.

*Binns, Petrich, Mason & Hester,* by *James J. Mason,* for petitioner.

*George F. Marsico* and *Burkey, Marsico, Rovai & McGoffin,* for respondents V. C. Edwards Contracting Co. et al.

*Ray Graves* and *Murray, Scott, McGavick, Gagliardi, Graves, Lane & Lowry,* for respondent McDowell-Wellman Engineering Company.

UTTER, J.—V. C. Edwards, a contractor, brought suit against the Port of Tacoma for damages allegedly incurred as a result of the port's acts in relation to a construction contract between the parties. The port impleaded their engineer, McDowell-Wellman Engineering Company, and cross-complained against Edwards. The trial to the court resulted in a verdict in favor of Edwards against the port for $225,595.49, and a dismissal of the third-party defendant, McDowell-Wellman Engineering Company.

The port raises four issues in the appeal. (1) Is the port chargeable for delay of construction suffered by Edwards? (2) If delays were caused by the port, did they constitute a breach of contract which was compensable in money damages? (3) If delays were caused by the port which are compensable by money damages, were such damages properly assessed? (4) Was the trial court correct in dismissing the third-party complaint against McDowell-Wellman Engineering Company?[1]

We affirm the trial court on all issues.

**The Port of Tacoma (Port) and V. C. Edwards Contracting Company (Edwards) entered into a contract on December 13, 1967. The contract provided that Edwards would construct a rail service yard and connecting trackage on the Port's premises, the Tacoma tideflats, and the Port would supply the necessary materials. McDowell-Wellman Engineering Company, independent consulting engineers, had prepared the plans and specifications according to information supplied by the Port. Among other things, the

---

[1]This case comes before this court on a petition for review from a Court of Appeals opinion, *V.C. Edwards Contracting Co. v. Port of Tacoma,* 7 Wn. App. 883, 503 P.2d 1133 (1972). Portions of that opinion set forth by asterisks are adopted as the opinion of this court.

plans called for 1,000 yards of fill to be used as ballast under the track. This fill was to be excavated by the contractor from other portions of the site. After consulting with McDowell-Wellman, the Port issued an addendum (No. 2) to the plans on November 15, 1967 which called the contractor's attention to five separate places where a sewer project would interfere with this rail project. The bids were opened 1 week later.

Notice to proceed was given to Edwards and construction began on January 18, 1968. For several reasons the work was not completed within the 270 days specified in the contract documents.

Edwards brought this suit against the Port alleging that the delay was caused by, among other things, defective plans, failure of the Port to supply necessary materials and failure of the Port to warn the plaintiff of conflicts with other contractors in the area. The Port entered a general denial, cross-complained for work to be completed and filed a third-party complaint against McDowell-Wellman alleging responsibility for the defective plans.

The trial court found that the Port substantially breached its contract in several respects. The court found the Port's failure to make decisions within a reasonable time, failure to furnish the promised material, and the Port's unintentionally misleading addendum No. 2 caused the plaintiff substantial delay in completing the work and was a substantial breach of contract.

The court also found that the contractor had to correct several design errors in the plans and that addendum No. 2 was misleading because the paths of Edwards and the sewer contractor crossed in over 30 places, not in only 5 as specified. The correction of the design errors entailed resurveying and recalculating parts of the plans plus importing an extra 92,000 yards of fill to be used as ballast when the plans called for only 1,000 yards. The misleading addendum and the Port's failure to supply materials and make decisions required Edwards to construct the railroad piecemeal and to shut down operations entirely for a short time

during August 1968. All this required Edwards to perform extra work not contemplated in the contract. The court found the contractor's cost (minus $18,000 due to overmanning) for this extra work to be reasonable so awarded plaintiff recovery for the extra costs plus profit in quantum meruit.**

The court found, insofar as the port's case against McDowell-Wellman, that

> no act or omission of the third party defendant . . . was responsible for any damages done to the plaintiff . . . That any inadequacies or errors or omissions were such as to be known to the defendant, Port of Tacoma, prior to the commission or omission of the same, and it was, therefore, responsible for such omissions or commissions.

Additional findings were entered indicating, as well, that the port failed to establish any sum in damages or any basis from which damages could be charged against the third-party defendant, McDowell-Wellman.

We consider the oral opinion of the trial court insofar as it is consistent with and amplifies the formal findings of fact. *Ferree v. Doric Co.*, 62 Wn.2d 561, 383 P.2d 900 (1963). In the oral opinion the court indicated it was primarily impressed on the issue of delay with the port's failure to accurately advise the contractor of the number of times his work would conflict with the sewer contractor. Although addendum No. 2 indicated there were five points of conflict between the two contractors, it failed to mention there were, in addition, some 30 additional points where lateral sewer lines also crossed the right-of-way. Even though this information was available in separate plans to the contractor, the trial court failed to find a duty on his part to examine the separate plans.

The oral opinion also indicates the court believed the port "was not aggressive enough in facing its problem" with regard to the need for additional ballast and that this also contributed to the delay. There is substantial evidence to support the court's findings.

The port next contends their contract with the general contractor limits his remedy in the event of owner-caused delays to a time extension. Cases typical of those cited for support of this proposition are: *Goss v. Northern Pac. Hosp. Ass'n,* 50 Wash. 236, 96 P. 1078 (1908); *Ericksen v. Edmonds School Dist. 15,* 13 Wn.2d 398, 125 P.2d 275 (1942); *United States v. Rice,* 317 U.S. 61, 87 L. Ed. 53, 63 S. Ct. 120 (1942).

The disputed contract provision in this case reads:

*Provided further,* that the Contractor shall not be charged with liquidated damages or any excess cost when the delay in completion of the work is due:
(a) . . .
(b) To unforeseeable cause beyond the control and without the fault or negligence of the contractor, including but not restricted to, acts of God, or of the public enemy, acts of the owner, acts of another Contractor in the performance of a contract with the Owner, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, and severe weather . . .

This provision refers only to the rights of the owner against the contractor and says nothing concerning the contractor's rights against the owner. It only serves to release the contractor from liquidated damages if he has been delayed by any of the causes or reasons set forth in subparagraph (b).

*Goss* is not in conflict with a holding here that under the terms of this contract, a time extension is not the sole remedy. There at page 237, the contract provision reads:

"Should the contractor be obstructed or delayed in the prosecution or completion of his work by the act, neglect, delay or default of the owner or the architects, or of any other contractor employed by the owner upon the work . . . then the time herein fixed for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all of the causes aforesaid . . ."

In construing this language, the court held that the parties undertook to put in writing all of their rights and liabilities

and since the parties had contracted that for any delay caused by the appellant by the "act, neglect, delay or default . . . of any other contractor," additional time was the extent of the contractor's remedy for such act or default.

In *Ericksen v. Edmonds School Dist. 15, supra* at 405, the contract provided:

"The Contractor shall not be entitled to any claim for damages on account of hindrances or delays from any cause whatsoever, but if occasioned by . . . any act or omission on the part of the Owner, such act, hindrance, or delay may entitle the Contractor to an extension of time in which to complete the work . . ."

In that case we held the contract expressly precluded the recovery of damages by the contractor for delay caused by the default of the owner and that that provision should be given full effect. We also emphasized, however, at page 408, that "in the absence of any provision in the contract to the contrary, a building or construction contractor who has been delayed in the performance of his contract may recover from the owner of the building damages for such delay if caused by the default of the owner." We stressed at page 409, that "language of such preclusive provisions is, however, usually given a strict construction because of the harsh results which may flow from the enforcement thereof." The contract clause in *Ericksen* differs substantially in its scope from that in this case.

In *United States v. Rice, supra* at 65, the government reserved the right to make change in specifications upon discovery of " 'subsurface and (or) latent conditions at the site materially differing from those shown on the drawings or indicated in the specifications . . .' " The court held in light of such a reserved right that delays incident to the permitted changes cannot amount to a breach of contract. The other cases relied upon by the port contain significantly different language from that of the contract in this case and do not compel a contrary conclusion here.

Defendant's next contention is that the trial court erred

in its assessment of damages. The port argues four matters: (1) the total reasonable cost to plaintiff was not the proper measure of damages; (2) the total cost of $706,918.42 was not shown to be reasonable; (3) the expense due to over-manning by plaintiff which was deducted from the total reasonable cost to plaintiff was not proven; and (4) the plaintiff was not entitled to overhead in profit of $137,783.68. The port argued that the proper measure of damages was the bid price plus any additional costs shown to be caused by the breach. *Laburnum Constr. Corp. v. United States*, 325 F.2d 451, 459 (Ct. Cl. 1963). This is not the ordinary breach of contract case. The court in its oral opinion stated "I find it [the delay] demolished his intended cost structure as well as his time structure." The delays of the port were so substantial as to remove the written contract of the parties as a practical basis for computing damages. *Bignold v. King County*, 65 Wn.2d 817, 399 P.2d 611 (1965); 5A *Corbin on Contracts* § 1124 (1964); 34 Wash. L. Rev. 487 (1959).

■ In every construction contract there is an implied term that the owner or person for whom the work is being done will not hinder or delay the contract, and for such delays the contractor may recover additional compensation. In *Bignold*, we approved the application of the doctrine of quantum meruit, noting it provides an appropriate basis for recovery when substantial changes occur which are not covered by the contract and are not within the contemplation of the parties if the effect is to require extra work and materials or to cause substantial loss to the contractor. We also there stated that profit is an appropriate factor in determining the quantum meruit where there are no circumstances which call for its exclusion. The critical factor in application of the doctrine is whether the contractor should have discovered or anticipated the changed condition. This is a question of fact resolved adversely to the port by the court. It found the port's delays regarding failure to furnish materials, its failure to make decisions within a reasonable time, the interference by other contrac-

tors in the right-of-way and the lack of available material necessary for a continuous operation "all resulted in the plaintiff being unable to proceed in a normal *contemplated* manner to construct said railway yard and adjoining lines." (Italics ours.) We read this finding to indicate, in the words of *Bignold,* that the contractor should not have discovered or anticipated the changed condition.

The port complains that the court allowed the introduction of testimony regarding recovery on a theory of quantum meruit after the case had initially been commenced on a theory of recovery based upon breach of contract. Civil Rule for Superior Court 15(b) provides:

> Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

■ The issue regarding the change of theory was raised by the port. The court, however, indicated it was going to proceed to hear testimony on that issue. No continuance was requested by the port to have additional time to meet the new theory. Failure to request a continuance, after the court decides an amendment is proper, precludes a party from urging on appeal that the lower court abused its discretion. 6 Wright & Miller, *Federal Practice & Procedure* § 1495, at 481 (1971).

 The contractor is entitled to the reasonable costs of performing the work as changed by the unanticipated circumstances. Where the court is convinced substantial damages have been incurred, even though the exact amount in dollars is incapable of proof, the injured party will not be denied a remedy in damages because of lack of certainty. 5 *Corbin on Contracts* § 1020, at 126 (1964). *Wenzler & Ward Plumbing & Heating Co. v. Sellen,* 53 Wn.2d 96, 330 P.2d 1068 (1958); *Reefer Queen Co. v. Marine Constr. & Design Co.,* 73 Wn.2d 774, 440 P.2d 448 (1968). The plaintiff's proof provided a reasonable basis for the court to exercise its discretion. If a court believes profits would have been made if there had been no breach by the defendants, recovery has been allowed where "the amount of profits prevented is scarcely subject to proof at all." 5 *Corbin on Contracts* § 1022, at 142 (1964); *Merager v. Turnbull,* 2 Wn.2d 711, 99 P.2d 434, 127 A.L.R. 1142 (1940).

There is substantial evidence to support the court's determination of the total reasonable cost of the project, less a deduction for overmanning. The trial court believed the testimony of Harold Grier, plaintiff's project manager, and V. C. Edwards, president of the plaintiff company. The court's determination of reasonableness follows its acceptance of their testimony. The trier of fact must exercise a large measure of responsible and informed discretion where the fact of damages is proven. *Wenzler & Ward Plumbing & Heating Co. v. Sellen, supra.*

The trial court found plaintiff employed more men than needed on the job at one point and deducted a figure of $18,000 to offset this cost against the amount awarded plaintiff. The testimony on this item is far from clear. There was testimony that at times, to meet emergencies, plaintiff had 67 or 70 men working. The plaintiff's engineer was asked, "What is the largest crew you would have typically had working?" He answered, "Again, this would have to be in the amount that you had to do the job. I would prefer to do it with 25 or 30 men, and I feel I get more work out of the men and do it more efficiently."

The trial court, in what was apparently an attempt to offset the damage award to plaintiff for its overmanning, awarded $18,000. This award was premised on a supposition, as indicated in its oral opinion, that there were 20 extra laborers paid at $30 a day for 6 weeks. Only the testimony quoted supports this award. Plaintiff does not cross-appeal the award and we are therefore concerned only with the appellant port's claim that it is unreasonably low. We have already commented on the difficulty in assessing precise damages under the facts of this case. While the way in which the offset was reached was admittedly speculative, it would seem to us incumbent upon the appellant port to furnish the trial court with more precise figures to substantiate any claimed larger sum. Having failed to do so, the port cannot now complain about a lack of precision of proof to substantiate its own claim.

The trial court properly dismissed McDowell-Wellman from the case. Its finding of fact at the conclusion of testimony which we have previously quoted is unchallenged. There was no assignment of error to these findings of fact and they therefore must constitute the facts of this appeal. *Kuhnhausen v. England*, 79 Wn.2d 282, 285, 484 P.2d 1135 (1971). They support the judgment of dismissal.

Judgment affirmed.

HALE C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, STAFFORD, WRIGHT, and BRACHTENBACH, JJ., concur.