[No. 3690–II.   Division Two.   August 7, 1980.]

MODERN BUILDERS, INC. OF TACOMA, *Respondent,* v. LENNARD K. MANKE, ET AL, *Appellants.*

*Edward M. Lane,* for appellants.

*Patrick T. Manza,* for respondent.

REED, C.J.—Lennard and Kathleen Manke appeal a judgment foreclosing a labor and materialmen's lien in favor of plaintiff upon defendants' real property. We reverse.

In March 1976 defendants purchased an older house in need of remodeling near Gig Harbor. Prior to purchasing the house, they asked Duane Anderson, vice president of Modern Builders, Inc. of Tacoma (Modern Builders), to estimate the cost of remodeling. Anderson responded that it could not be done for under $50,000. Both parties agreed that extensive remodeling was necessary in order to make

the house level and that extensive demolition and rebuilding of the interior would be necessary to modernize the house. Defendants purchased the house and asked Anderson to provide a written bid for the work. Anderson had plans drawn and on May 3, 1976 delivered a written, itemized estimate stating a total price of $57,077.43. Included in this estimate was $4,300 which was earmarked for leveling the interior floors by pouring concrete. Defendants applied to Puget Sound National Bank for financing, and the bank agreed to lend $57,804.16 for the remodeling.[1]

After receipt of the estimate and approval of the loan, defendants authorized plaintiff to begin work. Shortly thereafter, plaintiff's workmen discovered that the floors were out of level much more than originally estimated by Anderson. Specifically, after measuring, plaintiff's carpenters discovered that the lower floor was approximately 7 inches out of level, as opposed to the 1 1/2 inches originally contemplated, and that the upper story was also out of level. After the concrete was poured to achieve the desired leveling, much additional work was necessary to insure that the entire house appeared to be level. This required adjustment of walls, windows, fireplaces, siding, decks and porches so that they appeared level in relation to the floors. The record also shows that Mr. Manke requested many changes from the original plans, such as enlarging the kitchen work areas, using more expensive floor tiles, moving a window, changing stains used on the kitchen cabinets and other miscellaneous changes which required extra work and often required the substitution of more expensive materials than those included in the original estimate.

Puget Sound National Bank disbursed funds to plaintiff as work progressed. Reports certifying job progress were

---

[1]The minor discrepancy between the estimate figure of $57,077.43 and $57,804.16, the contract price appearing on subsequent documents, was explained by the parties at trial as reflecting the substitution of certain more expensive flooring material and the need to adjust the amount of the bank loan attributable to remodeling.

prepared by employees of plaintiff under Anderson's direction showing 40 percent completion on July 30, 1976, 61 percent completion on September 23, 1976, 78 percent completion on October 28, 1976, and 98 percent completion on December 15, 1976. All progress reports stated the contract price to be $57,804.16, and the amounts disbursed by the bank as work progressed were all computed in reference to this total price. The only claim for amounts sought in excess of the contract price was a claim for $2,100 on the last three reports which apparently represented excess expenses incurred by plaintiffs in hauling away debris from the jobsite, something defendants had originally agreed to do.

After work was completed and funds were disbursed by the bank, plaintiff presented defendants with a bill for an additional $66,327.59. This billing computed the amount owed by (1) adding material costs of $56,203.47, labor costs of $44,844.60, profit and overhead at 15 percent of cost, and sales tax for a total job price of $122,131.75; and (2) deducting amounts paid by the bank. On April 5, 1977, plaintiff filed a labor and materialmen's lien and eventually sued to foreclose the lien.

At trial Anderson explained the increased billing by claiming that the parties never agreed to a firm contract price of $57,804.16 in May 1976. He asserted that the figure set forth in his letter of May 3, 1976 was only a "guesstimate," not a bid to be accepted, and that it was used only to submit to the bank to obtain financing and to obtain building permits. Anderson maintained that the parties agreed that the job was to be done on a "cost–plus" basis by which the total price would be computed by adding the cost of labor and materials plus an allowance for overhead at 15 percent of these costs. In support, he argued that contractors never do extensive remodeling on a firm price basis and that, if a bid is used as a contract price and substantial changes in conditions occur, the contract is automatically converted to a cost–plus contract. Anderson also testified that he had done other smaller jobs for the

Mankes on a cost–plus basis in the past and presented expert testimony from another general contractor who maintained that remodeling jobs are universally done on a cost–plus basis.

Lennard Manke vigorously disputed that the parties had agreed to a cost–plus contract. He claimed that defendants and Anderson agreed to a firm price of $57,804.16 in May 1976 when plaintiff submitted the written bid which defendants accepted by authorizing work to begin. Manke admitted that he orally authorized extra work and the substitution of certain materials as the job progressed. He maintained, however, that defendants were assured by Anderson that this would not result in extraordinary extra costs, and that neither party contemplated that these extras would exceed $10,000. He also stated that, other than the $2,100 referred to on the progress reports, plaintiff did not present an itemized bill for costs in excess of the contract price, and further that defendants had no indication that the total cost of the job would depart radically from the $57,804.16 contract price until they received plaintiff's total bill for $122,131.75 on March 31, 1977. Anderson responded that he did not document the extra costs because he assumed that the parties had agreed to a cost–plus contract.

Throughout the proceedings the Mankes contended that the great majority of plaintiff's costs in excess of the original contract resulted from the need for more extensive work after plaintiff's workmen discovered that the floors were much more out of level than contemplated in the original estimate. Defendants argued that such additional costs necessary to carry out the contract were clearly foreseeable by plaintiff prior to setting the original contract price. As such, defendants contended that plaintiff was not entitled to additional compensation for such foreseeable costs. Expert witnesses who testified on behalf of both plaintiff and defendants gave the opinion that the leveling

problem which occurred on this job should have been fore-seen by a reasonably prudent contractor prior to submis-sion of the estimate. The Mankes also contended that the floors were not level after work was completed and filed a counterclaim for damages incurred because of this alleged defect in workmanship. They also asserted that the heating system was defective and that plaintiff failed to complete all the work contained in the initial estimate. A conflict of testimony was presented at trial between the expert wit-nesses of plaintiff and defendants concerning whether pouring concrete was the proper method to level the floors in this particular house, as opposed to jacking up the house, and whether the heating system functioned properly.

In its memorandum opinion the trial court found that all essential elements of a firm contract existed to support the conclusion that the parties agreed to a fixed price contract in May 1976. However, the court found that the parties had abandoned that contract by their performance which encompassed so many changes from the initial estimate. The court also found that the evidence was insufficient to show the parties had agreed to a cost–plus contract. The court then concluded that the proper measure of damages was quantum meruit. It set a figure of $86,000 as the value of the work done by plaintiff, a figure apparently arrived at by estimating the value of the house after remodeling based upon evidence in the record concerning the fair market value of the structure and the portion of that value attrib-utable to the improvements from plaintiff's work. The court entered judgment for $30,195.84, representing the differ-ence between the $86,000 value placed on the work and the amount paid to plaintiff by Puget Sound National Bank. Additionally, the court awarded plaintiff prejudgment interest on the award from February 10, 1977, the date work was completed, as well as attorney's fees. Defendants appeal this judgment.

The primary issue on appeal is whether the trial court erred in finding that the parties had abandoned their

express contract and by awarding recovery in quantum meruit. We hold that it did and reverse the award.

■ The parties to an express contract may abandon it and are released from their contractual obligations if the conduct of one party is inconsistent with the continued existence of the contract and that conduct is known to and acquiesced in by the other party. *Monroe v. Fetzer,* 56 Wn.2d 39, 42, 350 P.2d 1012 (1960); *Wiegardt v. Becken,* 21 Wn.2d 59, 73, 149 P.2d 929 (1944); *In re Estate of Lyman,* 7 Wn. App. 945, 948–49, 503 P.2d 1127 (1972), *aff'd mem.,* 82 Wn.2d 693, 512 P.2d 1093 (1973); 5A A. Corbin, *Contracts* § 1236 (1964). Uncommunicated, subjective intent by one party to abandon is not sufficient to release the obligations. In order for rescission to be legally operative, all parties to the contract must consent to rescission by words or objective conduct. *In re Estate of Lyman, supra* at 949 (citing Restatement of Contracts §§ 20–22 (1934)). *See also Morango v. Phillips,* 33 Wn.2d 351, 357, 205 P.2d 892 (1949); *Knapp v. Hoerner,* 22 Wn. App. 925, 928, 591 P.2d 1276 (1979). In the present case the evidence is insufficient to show a meeting of the minds to abandon the contract to perform the work for a fixed price. We concede that the parties to a contract may possibly agree to changes from the original agreement which are so extensive that the contract must be deemed abandoned as a matter of law. *See V.C. Edwards Contracting Co. v. Port of Tacoma,* 83 Wn.2d 7, 514 P.2d 1381 (1973). However, we find that plaintiff has not proven that the changes and modifications in the present case were so extensive as to require this conclusion. The action of defendants in ordering extra work and making changes in the original plans should not be deemed an abandonment of the original contract. Costs incurred by plaintiff for such extra work agreed to by defendants may be recovered, if proven, in addition to the contract price. *See generally American Sheet Metal Works, Inc. v. Haynes,* 67 Wn.2d 153, 407 P.2d 429 (1965); *Swenson v. Lowe,* 5 Wn. App. 186, 486 P.2d 1120 (1971).

We hold that the trial court's finding that the parties abandoned the express contract is not supported by substantial evidence. Nothing in the record supports the necessary conclusion that the Mankes agreed to abandon the fixed price contract or acquiesced in its abandonment by plaintiff. The clear weight of the evidence leads to the conclusion that the written bid submitted to defendants by plaintiff on May 3, 1976, was an offer which was accepted by defendants' authorization for plaintiff to begin work. Once a written bid is submitted and accepted, a legally binding contract is formed. *E.g., Clover Park School Dist. 400 v. Consolidated Dairy Prods. Co.,* 15 Wn. App. 429, 550 P.2d 47 (1976). The record shows that the parties acted to affirm the existence of the firm price contract when defendants obtained financing for the remodeling in reference to this amount and when plaintiff completed progress reports which refer specifically to the set contract price of $57,804.16. The fact that plaintiff expended more on labor and materials than contemplated by its bid does not release it from its obligation under the original contract. *Maryland Cas. Co. v. Seattle,* 9 Wn.2d 666, 676, 116 P.2d 280 (1941). Plaintiff's remedy for costs of owner requested changes from the original plans would have been to seek recovery of such costs, if they had been proven, in addition to the contract price. *See generally* 13 Am. Jur. 2d *Building and Construction Contracts* § 19 (1964).

We now turn to whether or not the trial court erred by awarding damages on the basis of quantum meruit. The conduct of one or more parties to an express contract may be such that performance is removed from the confines of the express contract. In such cases, it is proper for the court to assess damages on the basis of quantum meruit measured by the costs incurred by the performing party to complete the job and a reasonable allowance for profit. *V.C. Edwards Contracting Co. v. Port of Tacoma, supra* at 13. However, the total cost basis is not a favored method of recovery when an express contract exists. Quantum meruit may substitute for the contract price and form the basis of

total recovery only when substantial changes occur as work progresses which are not covered by the original contract and which were not within the contemplation of the parties when the contract was formed. *V.C. Edwards Contracting Co. v. Port of Tacoma, supra* at 13–14; *Bignold v. King County*, 65 Wn.2d 817, 827, 399 P.2d 611 (1965); *S.L. Rowland Constr. Co. v. Beall Pipe & Tank Corp.*, 14 Wn. App. 297, 304, 540 P.2d 912 (1975). *See also Nelse Mortensen & Co. v. Group Health Coop.*, 17 Wn. App. 703, 566 P.2d 560 (1977), *aff'd mem.*, 90 Wn.2d 843, 586 P.2d 469 (1978). The rationale for such recovery in these limited circumstances is that, in view of the unforeseen changed conditions, the contract price is insufficient to compensate the performing party for the additional work necessary to complete the contract as agreed. In order to prevent a resulting injustice, quantum meruit becomes the basis for the damage award rather than the price fixed by the express contract. *V.C. Edwards Contracting Co. v. Port of Tacoma, supra.* However, no quantum meruit compensation may be awarded for such "additional work" necessary to carry out the contract when the additional work should have been foreseen by the parties prior to contract formation. *Dravo Corp. v. Municipality of Metro Seattle*, 79 Wn.2d 214, 221, 484 P.2d 399 (1971). *See also Bignold v. King County, supra* at 826; *Maryland Cas. Co. v. Seattle, supra;* 13 Am. Jur. 2d *Building and Construction Contracts* § 6 (1964).

In the present case the trial court erred when it awarded damages for the entire job on the basis of quantum meruit. None of the expenses incurred by plaintiff in completing the job is of sufficient magnitude to take the performance out of the express contract. The additional expenses incurred by plaintiff because of its discovery of the greater leveling problem were clearly foreseeable by a reasonable contractor at the time of contract formation. As such, they do not qualify as unforeseeable "additional work" for which quantum meruit compensation may be obtained. *Maryland Cas. Co. v. Seattle, supra.*

██ The changes and modifications in the plans agreed to by the parties, however, may be recovered in quantum meruit in addition to the contract price. Such work qualifies as "extra work" arising outside and independent of the contract. In order to compensate the performing party for costs incurred because of extra work, the performing party may recover these costs plus a reasonable profit in quantum meruit. *Dravo Corp. v. Municipality of Metro Seattle, supra* at 221; *Bignold v. King County, supra* at 826. 13 Am. Jur. 2d § 19; 17 Am. Jur. 2d *Contracts* § 353 (1964). *See generally Losli v. Foster,* 37 Wn.2d 220, 222 P.2d 824 (1950). However, the burden is on the performing party to prove the costs of extra work. In the present case plaintiff presented no documentation of such extra costs other than the $2,100 claimed on the progress reports for cleaning up debris. Thus, although plaintiff may well have been entitled to recover compensation for "extra" work based on quantum meruit as well as the contract price, we hold it failed to present sufficient evidence to prove these costs at trial. Therefore, it may not recover such extra costs other than the $2,100 claim proven.[2]

In summary, we hold that the trial court erred by taking performance of this contract outside of the express contract and by awarding judgment for the entire job on the basis of quantum meruit.[3] The proper measure of damages would

---

[2]The following excerpt from the trial court's memorandum opinion illustrates the difficulty of segregating the costs attributable to extra work:

[N]o less than 24 material changes were made in the actual remodeling and interior design or materials. . . .

. . .

Through all of the difficulties of this particular project, the parties at no time, including the trial, ever attempted to place each item in its appropriate category as to whether it fit in the original contract or was to be an additional cost item. In fact, neither party ever attempted to even assign a cost to each problem, alteration, change or extra, even if it had been categorized as such.

[3]We note further that when quantum meruit recovery is allowed for extra or additional work, the measure of damages is the costs incurred by the performing party expressed as the cost of labor, materials and a reasonable allowance for profit, not the enhanced value to the estate of the party receiving performance.

have been to award the contract price of $57,804.16, plus proven costs including profit for "extra work" incurred because of changes and modifications of the plans originally agreed upon by the parties. No compensation in excess of the contract price may be allowed for "additional work" necessary to make the house level since such work was clearly foreseeable at the time of contract formation. Since plaintiff did not segregate and prove the great majority of its claimed extra costs for changes in the plans, plaintiff is entitled to a lien only for the amount of the contract price plus the proven $2,100 in extra costs as offset by amounts paid by Puget Sound National Bank.

■■ Defendants also assert that the trial court erred by awarding prejudgment interest and in making its award of attorney's fees. We agree. Prejudgment interest may be recovered only if a claim is liquidated or otherwise computed by a fixed standard in the contract without reference to extrinsic evidence. *E.g., Prier v. Refrigeration Eng'r Co.,* 74 Wn.2d 25, 32, 33, 442 P.2d 621 (1968). By its very nature, an award of damages based upon quantum meruit is not liquidated and is not readily ascertainable in the parties' contract. Therefore, prejudgment interest may not be awarded when a labor and materialmen's lien is set by quantum meruit. *See Heaton v. Imus,* 21 Wn. App. 914, 918, 587 P.2d 602 (1978).[4] Finally, the decision whether or not to award attorney's fees in such cases rests within the discretion of the trial court. RCW 60.04.130; *Walsh Serv.,*

---

*Losli v. Foster,* 37 Wn.2d 220, 222 P.2d 824 (1950); *King v. Clodfelter,* 10 Wn. App. 514, 522–23, 518 P.2d 206 (1974); C. McCormick, *Damages* § 165 (1935). Therefore, the trial court erred in basing the damage computation on the increased value of defendants' house after completion of the remodeling by plaintiff, rather than upon proof of plaintiff's actual costs.

[4]We also note that the trial court awarded prejudgment interest from February 10, 1977, the date work was completed. Interest on a labor and materialmen's lien, if allowed, runs from the date of filing the notice of the lien, April 5, 1977 in the present case, not the date that work was completed. *E.g., Brower Co. v. Noise Control of Seattle, Inc.,* 66 Wn.2d 204, 209, 401 P.2d 860 (1965).

*Inc. v. Feek,* 45 Wn.2d 289, 274 P.2d 117 (1954). *See generally Swenson v. Lowe, supra* at 193–94. In its memorandum opinion the trial court concluded that attorney's fees were required by law. We hold this to be erroneous and to be an abuse of discretion. Accordingly, on remand we direct that the trial court *exercise* its discretion in determining whether or not to award attorney's fees on any balance it determines to be owing on the contract price and $2,100 of extra work proven which has not been paid by the bank.

The judgment of the trial court foreclosing plaintiff's labor and materialmen's lien and awarding judgment on the basis of quantum meruit is reversed. This cause is remanded for further proceedings consistent with this opinion.

PEARSON, J., and SOULE, J. Pro Tem., concur.

Reconsideration denied October 1, 1980.

Review denied by Supreme Court November 21, 1980.