Argued and submitted February 5, affirmed March 28, 1990

# PFEIFER,
*Appellants,*

*v.*

# DME LIQUIDATING, INC., et al,
*Respondents.*

## (A8504-02191; CA A60429)

789 P2d 266

Gregory M. Byrne, Portland, argued the cause for appellants. With him on the briefs was Byrne & Barrow, Portland.

Jeffrey M. Kilmer, Portland, argued the cause for respondents. With him on the brief were Gregory B. Snook, Portland, and Allen, Kilmer, Schrader, Yazbeck & Chenoweth, P.C., Portland.

Before Graber, Presiding Judge, and Riggs and Edmonds, Judges.

## EDMONDS, J.

This case is before us for the second time. In our first opinion, *Pfeifer v. DME Liquidating, Inc.*, 91 Or App 47, 753 P2d 1389 (1988), we said:

"Plaintiff, individually and as the personal representative of her deceased husband's estate, brought this action for breach of an agreement whereby he subscribed to shares of Delta Medical Electronics, Inc., a Washington corporation, at the time of its organization. She also stated claims against the individual defendants for conversion and interference with contractual relations, in connection with the corporation's failure to issue shares pursuant to the agreement. The parties agreed that some of the subscribers, including plaintiff's husband [Pfeifer], would give the corporation promissory notes and stock pledge agreements to secure the agreed payment for their respective shares. Neither plaintiff nor [Pfeifer] did so, and neither tendered payment for the shares. However, the corporation did not demand tender of the security or payment for the shares. Plaintiff brought this action after learning that the corporation had sold its principal assets at a substantial profit, filed articles of dissolution and transferred its remaining assets and affairs to the defendant trustee of the DME Liquidating Trust." 91 Or App at 49. (Footnotes omitted.)

Plaintiff had assigned error to the granting of defendants' motions for directed verdicts on plaintiff's claims. The trial court directed the verdicts because it concluded, as a matter of law, that plaintiff and Pfeifer could not have been stockholders without having paid for the subscribed shares. We reversed, holding that, under Washington law, "[a]n original subscriber has the rights and obligations of a stockholder, whether or not he has paid for the shares, unless the subscription is lawfully revoked." 91 Or App at 50.

At trial on remand, the court denied plaintiff's motion for a directed verdict on the breach of contract claim and granted defendants' motions for directed verdicts on the conversion and interference with contractual relations claims. Plaintiff appeals, making multiple assignments of error. We affirm.

■ Plaintiff first assigns error to the court's denial of her motion for a directed verdict on the contract claim. After the court denied the motion, the jury found that the stock subscription had been mutually rescinded. Plaintiff argues that

there was no evidence to support that finding. Because we are reviewing plaintiff's motion for a directed verdict, we view the evidence in the light most favorable to defendants. *See Brown v. J. C. Penny Co.,* 297 Or 695, 705, 688 P2d 811 (1984).

Under Washington law,

> "[t]he parties to an express contract may abandon it and are released from their contractual obligations if the conduct of one party is inconsistent with the continued existence of the contract and that conduct is known to and acquiesced in by the other party. * * * In order for rescission to be legally operative, all parties to the contract must consent to rescission by words or objective conduct." *Modern Builders, Inc. of Tacoma v. Manke,* 27 Wash App 86, 92, 615 P2d 1332 (1980). (Citations omitted.)

The promissory notes were to be signed by the subscribers and their wives. There was testimony that Pfeifer had told two of the other subscribers that plaintiff was reluctant to sign their note and that he asked them to talk to plaintiff and to try to persuade her to sign, which they did. There was testimony that, a day or so later, Pfeifer told one of those other subscribers that plaintiff "won't sign." Finally, there was testimony that Pfeifer did not attend the meeting at which the notes were to be delivered to the corporation and that his note was never delivered. From that testimony, the jury could have found, as it did, that the subscription had been mutually rescinded.

Plaintiff argues that the corporation was prohibited by Washington statute from "cancelling" Pfeifer's subscription, because no "written demand" was made. RCW 23A.08.140 provides, in relevant part:

> "[N]o penalty working a forfeiture of a subscription * * * shall be declared as against any subscriber unless the amount due thereon shall remain unpaid for a period of 20 days after written demand has been made therefor."

However, the jury found that the subscription agreement was mutually rescinded, not that the corporation "cancelled" the subscription or imposed a "penalty working a forfeiture" of the subscription. The statute is inapplicable. The court did not err in denying plaintiff's motion for a directed verdict.

Plaintiff's second, third and fourth assignments of

error raise issues of whether the court erred in admitting evidence and allowing defense counsel to argue in his opening statement that plaintiff had received a substantial wrongful death settlement because of Pfeifer's death at a time when the corporation was suffering severe financial problems. Plaintiff argues that the evidence and the argument were irrelevant. Defendants respond by arguing that their failure to demand payment from plaintiff in 1983, when the corporation was in financial trouble and when defendants knew that plaintiff had just received a large sum of money, is relevant to the issue of whether the subscription had been rescinded in 1982.

"Relevant evidence" is evidence that makes the existence of a fact material to the determination of the action more or less probable. OEC 401. As defendants point out, evidence of how the parties acted after the purported rescission is probative of whether they intended to rescind. *See Welch v. U.S. Bancorp,* 286 Or 673, 692, 596 P2d 947 (1979); *Arden-Mayfair v. Patterson,* 46 Or App 849, 856, 613 P2d 1062, *rev den* 290 Or 149 (1980). The evidence and argument were relevant.

Plaintiff argues that, even if the evidence was relevant, the court erred in not excluding it under OEC 403.[1] The court rejected plaintiff's contentions that the evidence was more prejudicial then probative. We review its ruling only to determine whether, under the facts of this particular case, it was within the reasonable range of discretion. If the record supports either exclusion or admission, we must affirm. *Carter v. Moberly,* 263 Or 193, 200-201, 501 P2d 1276 (1972). The ruling was not unreasonable.

In plaintiff's fifth assignment of error, she argues that "[t]he court erred in giving the jury an irrelevant instruction that would lead [it] to believe that delivery of a promissory note is necessary to form a valid stock subscription." However, even assuming that the instruction should not have been given, the error was harmless, because the jury found

---

[1] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

that a subscription agreement had been entered into. *See Shrock v. Goodell,* 270 Or 504, 512, 528 P2d 1048 (1974).

Because of our disposition of the case, we do not reach plaintiff's other two assignments of error.

Affirmed.