[Nos. 23681-4-I; 23733-1-I.   Division One.   December 23, 1991.]

CKP, INC., *Respondent*, v. GRS CONSTRUCTION CO.,
ET AL, *Appellants*.

602

*Lawrence B. Bailey, Desmond L. Brown,* and *Preston Thorgrimson Shidler Gates & Ellis,* and *C. Nelson Berry III,* for appellants.

*Evan E. Inslee, Peter Deming,* and *Inslee, Best, Doezie & Ryder P.S.,* for respondent.

BAKER, J. — Park South Apartments (Park South), a limited partnership, and GRS Construction Company (GRS) appeal from the trial court's judgment and decree of foreclosure of materialmen's liens in favor of CKP. CKP cross-appeals from the trial court's summary judgment dismissal of its liens pursuant to RCW 60.04.010 and .040, to the extent that they were based on the statutory agency of GRS for Park South. CKP further alleges that its fee award should have been in the form of an in personam rather than an in rem judgment against Park South. We affirm in part and reverse in part.

# I
## FACTS

CKP entered into a subcontract with GRS, the prime contractor, to do site work and utility installation for the construction of an apartment complex, Park South. CKP commenced work on the Park South site on May 9, 1985. A work schedule of 45 days was contemplated in the original contract, based upon the scope of the work then set forth. For various reasons, delays ensued and disputes arose. In the course of the project, CKP performed certain extra work at the request of GRS prior to the issuance of written change orders authorizing payment for extras.

On July 16, 1985, the grading plans were revised. The new grading plans would have required virtually all of the installed utilities to be adjusted. The parties were unable to agree on a contract modification pertaining to a revised schedule for completion and whether additional change orders were necessary to complete the revised plans. GRS threatened to withhold payment unless CKP agreed to terms it proposed. However, CKP never agreed to the proposed terms and walked off the job on or about September 4, 1985.

CKP filed its lien on October 3, 1985, in the amount of $56,375. CKP mailed Park South the materialmen's notice required by RCW 60.04.020 on October 24, 1985. The notice of lien specifically alleged that additional work in excess of that required by the subcontract had been performed, and the full value of such labor, material and equipment was being calculated. CKP reserved the right to supplement the claim of lien by such additional amounts.

A complaint was subsequently filed for foreclosure of the lien. In the complaint and in an amended complaint, CKP alleged an additional $17,005 was owing, and that as a result of the changes and modifications to the scope of work demanded by GRS, CKP had suffered further damages in an amount to be proven at time of trial. CKP further expressly prayed to be allowed to amend its claim of lien to conform to the proof presented at trial.

GRS, Park South, and other parties involved at the trial level counterclaimed against CKP for damages in the approximate sum of $325,000, with other amounts to be proven at trial.

The parties stipulated that all Park South partners, including limited partners brought into the partnership after the filing of CKP's lien, and United Bank, which provided substitute financing in 1986 after the filing of the lien, were "fully aware of the existence of this lawsuit, the lien foreclosure action, and that a Lis Pendens was against the property."

In a pretrial motion for summary judgment, the trial court ruled that CKP was not required to send a materialmen's notice if GRS was acting as an actual agent for Park South, but that a question of fact remained as to whether GRS was acting in such a capacity. The court further ruled that CKP's lien authorized by RCW 60.04.040 could not be created through a statutory agent. It dismissed CKP's cause of action for foreclosure of its lien pursuant to RCW 60.04.010 for materials furnished prior to August 24, 1985 (60 days preceding notice), and its lien pursuant to RCW 60.04.040 for labor, materials or equipment furnished in the clearing, grading or filling of the subject property, to the extent that GRS ordered the work solely in its capacity as a statutory agent for Park South.

A 6-week bench trial ensued. The court held that the threats by GRS to withhold payment for completed work and the refusal to allow further change orders for the revised plans constituted a substantial breach of the contract by GRS and justified CKP's termination of the work. The court further concluded that because GRS was Park South's actual agent, CKP was not required to give a materialmen's notice to Park South or GRS and that CKP's lien was valid. The court allowed the lien to be amended in the full amount of the judgment. Judgment was awarded in the amount of $102,670.50, plus prejudgment interest from September 15, 1985, in the amount of $40,167.63, together with attorney fees in the amount of $89,500, for a total

judgment of $232,338.13 against GRS, secured by the real property owned by Park South.

Further recitation of the facts will follow as necessary for resolution of the issues herein.

II

PARK SOUTH APPEAL

A. Actual Agency of GRS for Park South.

Park South seeks dismissal of CKP's lien, claiming that GRS was not its actual agent. It argues that GRS retained the right to control the manner and method in which its work was done, a characteristic of an independent contractor as opposed to an agent. CKP responds that GRS was the actual agent of Park South for the limited purpose of subjecting Park South's property to liens. CKP asserts that Park South gave GRS that authority and consented to a limited agency for the purpose of establishing liens under RCW 60.04.010 and .040.

RCW 60.04.040 authorizes a lien against real property for labor, materials, and equipment furnished in the clearing, grading and filling of such property where such work is "at the request of the owner of any real property, or his agent". RCW 60.04.010 authorizes a lien against real property for labor, materials, and equipment furnished at the instance of the owner of the property or his agent. The section further provides:

> and every registered or licensed contractor, registered or licensed subcontractor, architect, or person having charge, of the construction, alteration or repair of any property subject to the lien as aforesaid, shall be held to be the agent of the owner for the purposes of the establishment of the lien created by this chapter[.]

An express or implied agency relationship may exist when one party acts at the instance of and, in some material degree, under the direction and control of another. *Hewson Constr., Inc. v. Reintree Corp.*, 101 Wn.2d 819, 823, 685 P.2d 1062 (1984). An agent is distinguished from an independent contractor who is not subject to control as to the means employed to perform a job. *Freeman v. Navarre*,

47 Wn.2d 760, 767, 289 P.2d 1015 (1955); *see also Patent Scaffolding Co. v. Roosevelt Apartments*, 171 Wash. 507, 510, 18 P.2d 857 (1933), *abrogated on other grounds in Crown Controls, Inc. v. Smiley*, 110 Wn.2d 695, 700, 706, 756 P.2d 717 (1988).

■■ The agency concept is flexible. The relation may be established for a limited purpose, or it may be broad. The relationship may be express or arise by inference from the relation of the parties. Whether one is the agent of another for a specific purpose depends in part upon whether that person has power to act with reference to that purpose. *Freeman*. Under lien statutes such as RCW 60.04.010 and .040, which require work to be done at the request of the owner or his agent, very clear proof of strong circumstances showing an intimate relationship between the owner and the making of the improvement is required to give rise to an implied agency. *See Hewson*, 101 Wn.2d at 824. The burden of establishing the agency relationship is on the party asserting it. *Hewson*, 101 Wn.2d at 823.

Gary R. Steinvall was the key decisionmaker for both GRS and Park South. He attended the weekly development meetings, acting in both capacities. He signed the contract between GRS and Park South in both capacities. The parties stipulated that information known to Steinvall in any capacity was simultaneously imputed to GRS and Park South. Thus, we conclude that CKP has shown a sufficiently intimate relationship between Park South and the making of improvements to its property by GRS to give rise to an implied agency. We further conclude that the evidence supports the trial court's determination that GRS was acting as Park South's actual agent for the purpose of incurring liens against the Park South property.[1]

■ Finally, where materials are furnished to an owner's actual agent, it is not necessary to give the owner written

---

[1] In view of our holding on this issue, we do not address CKP's challenge on cross appeal to the trial court's partial summary judgment dismissing CKP's lien claims to the extent they were based on GRS' statutory agency for Park South.

notice thereof pursuant to RCW 60.04.020. *R.H. Freitag Mfg. Co. v. Boeing Airplane Co.*, 55 Wn.2d 334, 340, 347 P.2d 1074 (1959). Nor is notice under RCW 60.04.020 a prerequisite to claiming a lien for labor. *See Neil F. Lampson Equip. Rental & Sales, Inc. v. West Pasco Water Sys., Inc.*, 68 Wn.2d 172, 173-75, 412 P.2d 106 (1966). Thus, CKP was not required to give any written notice to Park South.[2]

B. Amendment of Lien.

Park South asserts that because two of its limited partners and a lender, United Bank, acquired their interests subsequent to the filing of the lien notice, they hold protected third party interests that were injuriously affected by the trial court's amendment of CKP's lien at trial. Park South admits that these parties knew of the lien and foreclosure suit at the time they acquired their interests, but claims that the only notice provided by CKP was that it would seek to amend its lien upward by $17,005 above its original claim of $56,375. It argues, therefore, that equitable estoppel and policy considerations preclude amendment of the lien beyond that amount.

CKP replies that because both its first and amended complaints sought damages in an unspecified amount in addition to what was specifically set forth, and prayed for the amendment of the lien claim to conform to the proof presented at trial, the trial court's increase of the lien by $29,290 over the specific amount set forth in its pleadings was proper.

---

[2] Park South also asserts that CKP's labor lien pursuant to RCW 60.04.010 fails due to a failure to segregate the labor from material costs. To the extent Park South's argument can be construed to suggest that the failure to segregate labor from material invalidates the lien even if actual (as opposed to merely statutory) agency is shown, it is meritless. Both RCW 60.04.010 and .040 allow labor and material costs, and RCW 60.04.060 specifically eliminates any need to itemize or particularize the services rendered or material furnished. *Wenatchee Fed. Sav. & Loan Ass'n v. Mission Ridge Estates*, 80 Wn.2d 749, 754, 498 P.2d 841 (1972). The notice required in RCW 60.04.020 is intended to provide protection for owners against claims for materials, but does not apply to labor liens. *Hallett v. Phillips*, 73 Wash. 457, 461-64, 132 P. 51 (1913) (construing predecessor statute). Logic compels the conclusion that where no notice is required, there is no need to segregate the liens in order to maintain them.

■ RCW 60.04.060 provides that mechanics' and materialmen's liens "may be amended in case of action brought to foreclose the same, by order of the court, as pleadings may be, insofar as the interests of third parties shall not be affected by such amendment." The "affected by" proviso of this section has been interpreted to refer only to prejudicial effects. *See, e.g., Capital Sav. & Loan Ass'n v. Vaughn Hardware Co.*, 163 Wash. 396, 400, 1 P.2d 310 (1931). Amendments of such liens are in the nature of amendments to pleadings. *Bremerton Concrete Prods. Co. v. Miller*, 49 Wn. App. 806, 812, 745 P.2d 1338 (1987). Under CR 15, amendments should be liberally allowed absent prejudice to the opposing party. *Herron v. Tribune Pub'g Co.*, 108 Wn.2d 162, 165, 736 P.2d 249 (1987). Appellate review of a request to amend pleadings will not be upset absent abuse of discretion. *Herron*, 108 Wn.2d at 165.

Although United Bank and certain limited partners did acquire their interests after the filing of the lien, they had actual notice of the potential for amendment prior to the acquisition of their interests. Notice that the lien amount could increase upon further calculation and proof presented at trial was given in the lien itself, in the notice of the lien, in the complaint and in the amended complaint. A lis pendens had been filed. No prejudice resulted to these parties.[3] Thus, the trial court did not abuse its discretion in allowing the amendment.

■ However, the amendment of the lien is only proper insofar as it related to lienable items, *i.e.*, labor, materials, and equipment actually furnished, rather than for any general damages incurred due to delays. For this reason, the references in the complaint and amended complaint to further "damages" in an amount to be proven at trial must be interpreted to relate only to lienable amounts. Our

---

[3]Similarly, Park South's argument that equitable estoppel should apply is without merit; CKP made no false representations upon which United Bank or Park South relied to their detriment. *See Kessinger v. Anderson*, 31 Wn.2d 157, 169, 196 P.2d 289 (1948).

review of the record indicates that the trial court properly so limited its award.

## III
## PARK SOUTH AND GRS APPEALS
### A. Revised Grading Plans.

GRS claims that article 12.3 of the general conditions of its prime contract with Park South required CKP to provide written notice of its intent to make a claim for additional compensation and then to proceed with work on changes such as the revised grading plans of July 16, 1985, upon the written order of the owner, even in the absence of an agreement as to time or cost. GRS asserts that CKP's failure to perform these changes without requesting a written change order from GRS was a breach of its subcontract at article V and exhibit C.[4]

CKP replies that it could not do a written cost estimate for the revised grading plans because the property was not properly staked. It claims that it offered to do the additional work on a time and materials basis, but that GRS rejected this offer. Further, CKP asserts that it was not required to do anything under its subcontract without an agreed written order from GRS.

█ The trial court made the following unchallenged finding, which is a verity on appeal:

24. *CKP Was Not Obligated to Perform Work Outside of Contract Without Change Order or Agreement.* There is no evidence that the parties agreed that CKP would perform whatever work, no matter what the cost, at the instance and request of GRS.
A. The directions of Court Barber to CKP to perform the July 16, 1985 revised grading plans was a direction by him

---

[4]GRS requests this court to remand for a new trial on the issue of the damages it incurred as a result of CKP's delays and failure to perform work. However, GRS could never achieve this affirmative relief since it has failed to perfect its appeal in a manner that would justify such review. It has not, for example, assigned error to or made any argument pertaining to those parts of the decision denying it damages (findings of fact 22, 23). Thus, the most GRS could theoretically achieve on appeal is the reversal of CKP's lien, in whole or in part. *See BC Tire Corp. v. GTE Directories Corp.*, 46 Wn. App. 351, 355, 730 P.2d 726 (1986), *review denied*, 108 Wn.2d 1013 (1987).

that he wanted to get the work accomplished and anything having to do with monetary compensation or change orders, CKP would have to take up with Brad Hickel. Barber took the position that he was to get the job done at any cost and money or charge [*sic*] orders was a secondary consideration. Barber, time after time reiterated to CKP to do the work even though at the same time Barber was not clear or aware of CKP's contractual responsibility and was not taking charge, as superintendent, to make sure that CKP obtained a change order for the work. This position precluded resolution in that the very superintendent charged to get the work done and who was directing CKP, did not participate or become aware of the problem facing CKP in trying to carry out his demands.

B. . . . Portions of the revised grading plan were discussed between Scott Traverso and CKP, however, Traverso and GRS through Hickel took the position that there would be no more change orders and CKP would do the work.

Thus, it is a verity on appeal that CKP was not *required* to perform any work demanded by GRS that was outside the contract, including the changes in the revised grading plans, absent a written change order.

■ GRS does properly assign error to a portion of finding of fact 24B that without restaking, CKP was unable to calculate the cost of performing the July 16, 1985, revisions. However, our review of the record indicates that substantial evidence supports that finding. *See American Nursery Prods., Inc. v. Indian Wells Orchards*, 115 Wn.2d 217, 222, 797 P.2d 477 (1990). Indeed, GRS' assertion to the contrary is completely unsupported by the record.

B. Timely Written Requests for Additional Compensation or Time.

GRS asserts that CKP had a duty to make timely written requests for additional compensation or time for the extras it claims, pursuant to article 12.3 of the general conditions. GRS further asserts that because CKP made no requests for extras (french drains, overexcavation, aeration, sewer system) prior to trial, it has waived any request for payment pursuant to these items.

CKP replies that article 12, which is part of the prime contract, does not apply to its subcontract with GRS, because it conflicts with article V and exhibit C of the sub-

contract. In any case, argues CKP, the parties waived any contractual requirement for a writing by their actions. Further, CKP asserts the complaint notified GRS of the additional amounts that CKP intended to prove at trial.

Findings of fact 12, 15, 15.1, 15.2, and 16 through 21, most of which are verities on appeal, support CKP's assertion that both parties waived the contractual requirement for a writing to receive compensation for extras by their actions. Those portions of the findings supporting that position that are challenged on appeal are amply supported by substantial evidence in the record.

The pattern of activity shown by the facts clearly demonstrates a waiver by both sides of the contractual requirements to enter into a written change order prior to CKP's commencing any *agreed* work (as opposed to all work requested by GRS) outside the contract. It is a verity on appeal that notwithstanding the allegations of GRS that time extensions would only be granted if the time request were made within 48 hours of the event, GRS did in fact grant time extensions that were not put into written change order form.

The evidence relating to this pattern of activity amply supports the trial court's finding, which GRS does challenge on appeal, that delay was occasioned by acts of GRS; that GRS should have granted extensions but did not; and that GRS cannot contend that CKP delayed the project construction.

Thus, CKP and GRS waived the requirement to obtain written change orders prior to the commencement of agreed extra work.

C. Prejudgment Interest.

1. Principal Contract Balance.

GRS and Park South contend that the amounts claimed by CKP were unliquidated at the time of trial because there were disputes remaining about the percentage completion of the principal contract balance.

CKP replies that the contract and the modifications thereto specified amounts to be paid for certain items, and

that the award was based on a determination of percentage of completion of each item. CKP admits these percentages were in dispute, but asserts that does not change the character of its claim as a liquidated one.

Whether prejudgment interest is awardable depends upon whether the claim is a liquidated or unliquidated claim. *Hansen v. Rothaus*, 107 Wn.2d 468, 472, 730 P.2d 662 (1986). The rule is that

> [i]nterest prior to judgment is allowable (1) when an amount claimed is "liquidated" or (2) when the amount of an "unliquidated" claim is for an amount due upon a specific contract for the payment of money and the amount due is determinable by computation with reference to a fixed standard contained in the contract, without reliance on opinion or discretion.

*Prier v. Refrigeration Eng'g Co.*, 74 Wn.2d 25, 32, 442 P.2d 621 (1968).

■ A liquidated claim is a claim where the evidence furnishes data which, even though challenged and successfully reduced, would make it possible to compute the amount with exactness. *See Prier*, 74 Wn.2d at 32-33. An unliquidated claim, by contrast, is one

> where the exact amount of the sum to be allowed cannot be definitely fixed from the facts proved, disputed or undisputed[.] . . . In short, it is the character of the claim and not of the defense that is determinative of the question whether an amount of money sued for is a "liquidated sum."

(Italics omitted.) *Prier*, 74 Wn.2d at 33 (quoting C. McCormick, *Damages* § 54, at 216 (1935)). A defendant should not be required to pay prejudgment interest in cases where he is unable to ascertain the amount owed. *Hansen*, 107 Wn.2d at 473.

Applying these principles to the instant case, the lien amounts for the basic contract, which was for a fixed sum, are liquidated, even though there may have been disputes as to the percentages completed. Thus, we affirm the trial court's award of prejudgment interest on those amounts.

2. Form of Remedy for Extras.

■ GRS further asserts that contractual, rather than equitable, remedies are exclusive since the contract provided

only for them. CKP replies that the trial court's award for extras was not an equitable quantum meruit award, but rather, it was for oral contracts, to be paid on a time and materials basis. The significance of the characterization of the award is that quantum meruit awards are unliquidated, and hence may not be the basis of an award of prejudgment interest. *Modern Builders, Inc. v. Manke*, 27 Wn. App. 86, 96, 615 P.2d 1332, *review denied*, 94 Wn.2d 1023 (1980).

Quantum meruit is an equitable form of recovery defined as a reasonable amount for the work done. *Irwin Concrete, Inc. v. Sun Coast Properties, Inc.*, 33 Wn. App. 190, 195, 653 P.2d 1331 (1982). It can be calculated a number of different ways. *See, e.g., Irwin Concrete, supra* (contract prices may represent value of work); *Manke*, 27 Wn. App. at 91, 93-95 (fair market value of improvements; costs plus a reasonable profit). The method of calculation will depend upon whether a contract was in existence, whether it was abandoned, and whether substantial changes occurred that were not foreseeable by the parties in the contract thus formed. *Manke*, 27 Wn. App. at 91-95.

The facts of *Manke* are very similar to those of the instant case. There, a fixed bid was given for a remodeling job. Shortly after commencing work, it became clear that conditions would require significant amounts of additional work. Furthermore, the owner requested many changes from the original plans. *Manke*, 27 Wn. App. at 88. The contractor assumed that the estimated price had been abandoned and that the parties had agreed to a time and materials contract and, after completion of the job, submitted a bill for approximately twice the original bid amount. The owner admitted that he had orally authorized extra work as the job progressed, but maintained that neither party had contemplated such a great price increase. *Manke*, 27 Wn. App. at 90.

The *Manke* court held that the contract had not been abandoned, and that the contractor's remedy was to seek recovery of costs in addition to the contract price. The court held that the costs of extra work proven by the contractor,

plus a reasonable profit, were recoverable in quantum meruit for changes and modifications in the plans agreed to by the parties. Such work qualified as extra work arising outside and independent of the contract price, which was also upheld. *Manke*, 27 Wn. App. at 95-96.[5]

The relationship to the facts of this case is striking, and supports the argument that CKP's award was in quantum meruit. On the other hand, the extras performed in this case cannot all be so uniformly categorized as those in *Manke*.

First, some extras (described in finding of fact 13) were the subject of executed contract modifications 1 and 3 through 7, which clearly defined price or the manner in which price would be computed. A second group of claimed extras (described in findings of fact 15, 15.1 and 15.2) includes work that was not made the subject of executed contract modifications, though substantial evidence demonstrates this work was performed expressly at the request of GRS, with the implied agreement to pay for the extra work at a reasonable cost. Also falling within this second category are the french drains (described in finding of fact 16). Substantial evidence supports the finding that GRS was aware of the price per lineal foot of these extra drains. Additionally, those extras (described in findings of fact 17, 18, 19), for which GRS never intended to pay or for which the evidence was disputed with regard to whether an understanding was reached prior to the undertaking as to price or manner of computation of price, fall within this second category.

---

[5]'GRS' assertion that contractual remedies must be exclusive simply because a contract existed is meritless. Its citation of *Nelse Mortensen & Co. v. Group Health Coop.*, 17 Wn. App. 703, 566 P.2d 560 (1977), *aff'd*, 90 Wn.2d 843, 586 P.2d 469 (1978) is inapposite, since that case dealt with quantum meruit damages for delays where the contract specifically barred such claims and provided for contractual remedies for delays. Here, the quantum meruit recovery sought is for time and materials expended beyond what the contract contemplated. The GRS-CKP contract does not bar such a claim or otherwise provide for it.

██ We conclude that those extras which were reduced to definite sums in contract modification orders signed by both parties, that is, contract modifications 1 and 3 through 7, represent liquidated amounts to which prejudgment interest may be applied.

██ The extra work in the second category, however, was not reduced to written contract modifications executed by both parties, but rather was proved by testimony, job diaries, and other such documents. It therefore falls into the category described in *Modern Builders, Inc. v. Manke*, *supra*, that is, extra work arising outside and independent of the contract for which CKP may recover costs plus a reasonable profit in quantum meruit. *See Manke*, 27 Wn. App. at 95. These extras were challenged as to reasonableness of amount awarded, both at trial and on appeal, and are therefore unliquidated, because reliance upon opinion and discretion was necessary in determining the reasonableness of the amounts expended. *See Hansen*, 107 Wn.2d at 477. The trial court erred in awarding prejudgment interest on these unliquidated sums.

We therefore reverse and remand to the trial court for apportionment of the award according to these guidelines, and the resulting recalculation of the award of prejudgment interest.

3. Date From Which Interest Allowable.

GRS and Park South next contend that the selection of September 15, 1985, as the date from which prejudgment interest should run was arbitrary.

Pursuant to the subcontract, GRS agreed to pay CKP monthly installments, following submission by CKP of a statement of the work completed during the preceding month, with 10 percent of each estimate to be retained until final payment. Payment was to be made by GRS within 3 days of its receipt of the monthly progress payments from Park South. GRS was to be paid by the 10th of each month. Thus, in the usual course of events, payment would be due to CKP on the 13th day of the month. CKP's lien sought interest from September 10, 1985.

█ The trial court's award of interest from September 15, 1985, was apparently derived from the date payment was due to CKP, September 13, 1985. Prejudgment interest may be awarded from the payment due date. *Prier*, 74 Wn.2d at 34-35. CKP does not request any adjustment back to September 13. We therefore hold that interest shall accrue from September 15, 1985.

The cases cited by Park South suggesting that interest should be allowed only from the date of filing the notice of lien are not applicable, since that principle applies where no claim is made for interest in the lien notice as having accrued prior to the date of the notice, and where the complaint prays for interest from the date of the lien only. *See Standard Lumber Co. v. Fields*, 29 Wn.2d 327, 352, 187 P.2d 283, 175 A.L.R. 309 (1947). Here, CKP claimed interest from September 10, 1985, in its subsequently filed lien notice and in its complaint.

D. Sufficiency of Evidence To Support Extras.

GRS claims there is a lack of documentation to support the extras, alleging they were established only by the testimony of Charles Parsons. CKP, however, cites to numerous sources in the record, both documentary and testimonial, that support the trial court's award, and further replies that findings of fact 21 and 23, which are verities on appeal since they have not been challenged by GRS, support its right to the award.

CKP is correct. Parsons' testimony was buttressed by daily work diaries of both CKP and GRS, and geotechnical field reports. Further documentary support for these extras came from change orders drafted but unsigned by the parties. GRS' assertion that CKP should be barred from recovery of these extras is without merit. Substantial evidence supports CKP's right to compensation for all of the extras awarded by the trial court.

E. Waiver of Contractual Provision.

GRS claims it was unaware that CKP would seek additional compensation, and therefore could not have intentionally and voluntarily waived the contractual provision,

article III and exhibit C, requiring CKP to make written requests for additional time or compensation within 48 hours of the start of any delay. CKP replies that the evidence supports waiver by GRS of this provision.

■ Our careful review of the record indicates that both challenged and unchallenged findings of the trial court support the waiver pattern established by both parties. Those findings that are challenged are amply supported in the record.

This case is distinguishable from one relied on by GRS, *Bjerkeseth v. Lysnes*, 173 Wash. 229, 22 P.2d 660 (1933), where the owner denied he had ordered any extras and insisted that any changes made to the contract must come within the contract price. *Lysnes*, 173 Wash. at 230-31. Here, the evidence established a clear pattern of GRS orally directing changes and CKP making the changes as directed without any written request. Thus, the contractual requirement regarding written requests for extras was waived in those circumstances where CKP followed oral directives. *See Lysnes*, 173 Wash. at 232; *see also American Sheet Metal Works, Inc. v. Haynes*, 67 Wn.2d 153, 158, 407 P.2d 429 (1965); *Swenson v. Lowe*, 5 Wn. App. 186, 188, 486 P.2d 1120 (1971).

F. CKP's Walkout.

GRS seeks remand for a determination of damages it sustained due to CKP's walkout, which it contends was a breach of its subcontract.[6] GRS argues that it had the contractual right under article IX to withhold payment from CKP until work that was performed during August of 1985 was verified and GRS had reasonable time to receive payment from Park South. GRS further claims it had the contractual right under article IX to withhold payment due to CKP's failure to perform the revised grading plans. Further, GRS asserts that CKP was in default when it refused to agree to the contract modification 2 progress schedule.

---

[6] See footnote 4 with regard to the limited nature of the relief GRS can achieve.

CKP cites to unchallenged portions of findings of fact 21, 23, and 26 to support its position that GRS was the party in breach of the contract.

██ ██ Repudiation of a contract by one party may be treated by the other as a breach which will excuse the other's performance. Whether facts have been established showing repudiation is a question for the finder of fact. An intent to repudiate may be expressly asserted or circumstantially manifested by conduct. *Hemisphere Loggers & Contractors, Inc. v. Everett Plywood Corp.*, 7 Wn. App. 232, 234, 499 P.2d 85, *review denied*, 81 Wn.2d 1007 (1972). An anticipatory breach occurs when one of the parties to a bilateral contract either expressly or impliedly repudiates the contract prior to the time for performance. The law requires a positive statement or action indicating distinctly and unequivocally that the repudiating party will not substantially perform his contractual obligations. *Lovric v. Dunatov*, 18 Wn. App. 274, 282, 567 P.2d 678 (1977).

Unchallenged findings cited by CKP as well as unchallenged finding of fact 27 support CKP's position that GRS was the party in breach of the contract. Furthermore, to the extent that finding of fact 26 is properly challenged on appeal, our review of the record indicates that substantial evidence supports it.[7]

██ The overwhelming evidence in the record is that GRS repeatedly threatened to withhold payment from CKP unless it signed contract modification 2. That was a repudiation by GRS of its contract and an anticipatory breach thereof. We therefore conclude that CKP was justified in walking off the job.

G. Attorney Fees to CKP.

GRS and Park South assert that a fee award to CKP equal to 87 percent of the principal amount of the judgment

---

[7]GRS failed to make a proper assignment of error to finding of fact 26. *See State v. Schaupp*, 111 Wn.2d 34, 44, 757 P.2d 970 (1988) (Brachtenbach, J., dissenting); RAP 10.3(g). Nonetheless, the nature of its challenge is clear to the statement therein that CKP was justified in terminating its work. Thus we have not regarded that as a verity in our analysis. *See Green River Comm'ty College Dist. 10 v. Higher Educ. Personnel Bd.*, 107 Wn.2d 427, 431, 730 P.2d 653 (1986).

was an abuse of discretion. They seek reduction of the fee. Park South further argues that no fees attributable to claims for extras above the specifically set forth lien amount of $56,375, nor any fees attributable to the defense of GRS and Park South counterclaims, are recoverable against Park South's property. Park South therefore seeks a remand for apportionment of the fees.

CKP replies that after 6 weeks of a difficult trial, in which it prevailed on nearly all points, a fee award of $89,500 was justified. It asserts that attorney time in the amount of $126,988 was documented in the trial court by affidavit. Further, it argues that counterclaim defense fees may be awarded in a lien foreclosure action since the award under RCW 60.04.130 goes to the "prevailing party . . . whether plaintiff or defendant". CKP further argues that it was within the trial court's discretion to order this fee, when considering that the counterclaims asserted were in excess of $400,000, putting over $500,000 at issue. Thus, the fee award was less than 20 percent of the total amount at issue.

█ Pursuant to RCW 60.04.130 the prevailing party is entitled to attorney fees from trial and on appeal in a lien foreclosure action. The decision as to whether to award attorney fees is discretionary with the court. *Manke*, 27 Wn. App. at 96. Fees incurred in proving extras over a contract price may be allowed. *Manke*, 27 Wn. App. at 97. The trial court did not abuse its discretion in awarding fees attributable to proving the extras.

█ Furthermore, the defense of the counterclaims was inextricably intertwined with CKP's establishment of its lien rights.[8] Thus, CKP was properly allowed fees incurred in the defense of counterclaims. The case cited by Park South, *Johnson v. Thompson Constr.*, 1 Wn. App. 194, 196,

---

[8]We note that the basis for the trial court's award was not merely the statute, but also a contractual provision allowing for attorney fees to a prevailing party. The trial court did make findings with regard to certain of the factors to be considered in determining the reasonableness of a fee under a contractual provision, as required by *Singleton v. Frost*, 108 Wn.2d 723, 731, 742 P.2d 1224 (1987).

460 P.2d 291 (1969), is distinguishable, since the lien was not at issue at the point in the case in which fees were awarded.

We find no abuse of discretion in the fee award, and hold that all of the fees awarded may be recovered against the property of Park South.

## IV
### CKP Cross Appeal

CKP asserts that as prevailing party under RCW 60.04.130, it is entitled to conversion of its fee award to a personal judgment against Park South. CKP argues that since RCW 60.04.130 is reciprocal, granting a fee award to a prevailing plaintiff or defendant, if Park South had won, its award would be a personal judgment. Thus, CKP maintains it violates equal protection to grant only in rem recovery rights to a prevailing lienor. CKP argues that the rule that liens are only in rem refers only to the principal judgment but not to a fee award.

Park South replies that it was not in privity with CKP, and therefore no personal judgment rights should be awarded.

RCW 60.04.130 provides for a personal judgment against any party personally liable for the debt, enforceable against the property liable. A personal judgment will be enforced only if there is a deficiency judgment upon execution of the property. Such a scheme is a rational legislative choice that takes into account the noncontractual nature of the subcontractor-owner relationship while allowing for reciprocity. The grant provided by the lien statutes is in rem, not in personam. *Adel v. Blattman*, 57 Wn.2d 337, 341, 357 P.2d 159 (1960). The statute does not violate equal protection and we decline to grant CKP an in personam judgment against Park South with regard to fees.

## V
### Attorney Fees on Appeal

CKP seeks its fees on appeal as prevailing party pursuant to RCW 60.04.130. It seeks an amendment of its lien

to reflect the additional award. We grant CKP its fees on appeal, refer the matter to the commissioner of this court for resolution of the amount, and order the lien to be appropriately amended.

Affirmed in part, reversed in part, and remanded.

SCHOLFIELD and FORREST, JJ., concur.

Reconsideration denied February 5 and 28, 1992.

Review denied at 120 Wn.2d 1010 (1992).