# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

TOP LINE BUILDERS, INC., a
Washington corporation,

        Respondent/Cross Appellant,

        v.

FREDERICK W. BOVENKAMP and
SHARON M. BOVENKAMP, husband and
wife, and the marital community composed
thereof, dba BOVENKAMP FAMILY, LLC-
SERIES 8466 CAMAS; AL'S ELECTRIC &
PLUMBING, INC., a Washington
corporation; UPSCALE ENTERPRIZE,
INC., a Washington corporation; DAVID
EVANS & ASSOCIATES, INC., an Oregon
corporation; and ZDS ARCHITECTS, INC.,
a Washington corporation,

        Defendants,

U.S. BANK, N.A.,

        Appellant/Cross Respondent,

OLD REPUBLIC SURETY COMPANY,
Bond No. YLI264739,

        Third Party Defendant.

No. 69225-9-I

DIVISION ONE

PUBLISHED OPINION

FILED: March 10, 2014

APPELWICK, J. — Top Line foreclosed on its statutory mechanic's lien and recovered the unpaid contract price plus sums awarded in quantum meruit for extra work performed at the owner's request, but without written change orders required by

contract.  U.S. Bank argues that its deed of trust, though junior to the mechanic's lien, should have priority over the amounts awarded in quantum meruit.  We affirm.

## FACTS

In early 2008, Frederick Bovenkamp asked Top Line Builders, Inc. to construct a prototype residence on his property in Blaine, Washington.  The residence was designed to meet the gold certification standard of Leadership in Energy and Environmental Design (LEED)—the standard for green building design.

Top Line began construction on February 10, 2008.  Though Top Line believed the parties agreed to construction on a cost-plus basis, Bovenkamp and Top Line in fact executed a written fixed price contract for $845,286.80 in February 2008.  The contract required written, signed change orders.[1]  At the time, Bovenkamp did not have any financing in place and initially paid Top Line $170,000 from his own funds.  As construction progressed, Top Line submitted monthly invoices to Bovenkamp with supporting documents detailing costs incurred.

In June 2008, after being denied financing by at least two other lenders, Bovenkamp met with U.S. Bank (USB) to discuss financing.  Bovenkamp presented the $845,286.80 fixed price contract to USB, and USB approved Bovenkamp's construction

---

[1] The contract further stated:
[W]ork may proceed prior to written authorization, at the Contractor's discretion, on such work as to not unduly delay the project if the Owner has verbally authorized such work with the Contractor, project manager or the onsite superintendant.  The Owner may verbally request additional work and in so doing agrees to pay the contractor for such work.  Such verbal authorization is documented in the owner's construction file as to the date and persons involved in the discussion.  Within the current month, a written change order shall be provided to the owner for the owner's signature and returned to the Contractor.

loan for $995,000.00. This additional amount above the fixed price was a contingency for taxes and cost overruns. To secure the loan, USB filed a deed of trust against Bovenkamp's property on August 12, 2008.

Bovenkamp, USB, and Top Line signed a residential construction Loan Procedures Assignment and Consent Agreement (LPA) at USB's request. The LPA required that Top Line and Bovenkamp execute a written construction contract and written change orders for any extra work requiring additional funds.[2] This reflected the existing contract between Top Line and Bovenkamp.

Over the course of construction, Bovenkamp requested unforeseen modifications to the plans and specifications of the residence, which Top Line performed. This extra work increased the cost of labor and materials for Top Line above the fixed contract price. Top Line and Bovenkamp usually discussed the changes, and sometimes—but not always—agreed to the costs associated with those changes. Top Line and Bovenkamp did not prepare or execute signed, written change orders for this extra work. Bovenkamp sent draw requests to USB, but neither Bovenkamp nor Top Line submitted change orders to USB.

---

[2] The LPA also specified that construction could not begin until after the loan closed, but USB approved the loan knowing that construction had begun months earlier.

3

By April 2009, Top Line substantially completed construction on the prototype residence. Bovenkamp and Top Line did a walk-through and created a punch list of items for Top Line to address before final completion. Top Line performed all the punch list items and Bovenkamp did not request any further corrections. At this time, Bovenkamp still owed Top Line $111,085.29 for work and materials. Approximately $25,000 was overdue under the fixed price contract. Another $85,507.31 for extra work and materials exceeding the written contract price was also overdue.

Bovenkamp assured Top Line that it would be paid in full when it sent USB the certificate of occupancy. Top Line did so on April 30, 2009. Top Line also sent Bovenkamp and USB a list of changes that occurred during the project, but USB told Top Line that it could do nothing about the cost overruns. Even after Top Line provided the certificate of occupancy, Bovenkamp never submitted a final draw request to USB for the overdue $111,085.29 owed to Top Line and never paid Top Line any of that remaining amount. On June 9, 2009, Top Line filed an amended mechanic's lien on the property for $111,085.29.

On January 6, 2010, Top Line filed suit seeking foreclosure of its amended mechanic's lien. Top Line named USB as a defendant, along with Bovenkamp and other parties with an interest in the property. Bovenkamp answered, but USB failed to appear or submit an answer. Top Line obtained a default order against USB. The trial court also granted Top Line's motion for partial summary judgment establishing that its mechanic's lien had priority over all other security interests, to the extent that Top Line prevailed in obtaining a monetary judgment on its lien.

4

USB subsequently appeared and requested that the trial court set aside the partial summary judgment order. The court declined to do so, but allowed USB to answer the complaint and contest at trial the amount of money Top Line could recover.

On August 12, 2011, Top Line moved to amend its complaint to add a cause of action for quantum meruit, which the trial court granted. Top Line's second amended complaint requested recovery in quantum meruit for the extra work and materials it provided above the fixed contract price, as claimed in its lien.

On the eve of trial, Top Line filed a motion in limine arguing that USB did not have standing to dispute issues related to the construction contract between Bovenkamp and Top Line—specifically, the change order provision and amount owed. The court denied Top Line's motion, and trial began on November 1, 2011.

At trial, Top Line's owner, Charles Rohrer, testified that his actual agreement with Bovenkamp was a verbal cost-plus contract that did not require change orders. Rohrer explained that when Bovenkamp was unable to secure financing based on this cost-plus contract, Rohrer drafted a fixed price contract to induce USB into financing the project. Bovenkamp disputed Rohrer's assertion and testified that he and Rohrer agreed to a fixed price contract that predated any loan agreement with USB.

At the end of trial, the trial court ruled that the agreement between Top Line and Bovenkamp was a fixed price contract requiring written, signed change orders. It concluded that Top Line did not comply with the change order obligations. However, it also found that "Mr. Bovenkamp is in equity in quantum meruit obligated to [Top Line] in an amount of an additional $79,731.15. Plus the amount unpaid under the contract of

5

$25,544.43." The trial court concluded that only the $25,544.43 under the contract attached to Top Line's mechanic's lien. On January 25, 2012, it entered written findings of fact and conclusions of law pursuant to its oral ruling.

On Top Line's and Bovenkamp's separate motions for reconsideration, the trial court entered amended findings of fact and conclusions of law. It concluded that Top Line and Bovenkamp mutually waived the change order requirement. The trial court further held that USB did not waive the change order requirement, but because extra work did not exceed the loan amount, the parties' breach was technical and immaterial. The trial court ultimately concluded that Top Line's quantum meruit award was secured by its mechanic's lien with priority over USB's interest. USB appeals from these amended findings of fact and conclusions of law.

## DISCUSSION

USB argues that the trial court erred in reconsidering its original verdict and including quantum meruit recovery in Top Line's mechanic's lien. USB also argues the trial court erred in allowing Top Line to amend its complaint to include a claim in quantum meruit. Further, USB argues that equitable estoppel should bar Top Line from any recovery impairing USB's lien.

I.   Quantum Meruit and the Statutory Mechanic's Lien

USB agrees that Top Line is entitled to a mechanic's lien for the $25,544.43 unpaid balance under the fixed price contract. It agrees that Top Line's mechanic's lien has priority over its deed of trust. USB also agrees that Top Line is entitled to recover the cost of its extra work, $79,731.15, in quantum meruit, but secured only by a

judgment lien against Bovenkamp. USB disagrees with the trial court's conclusion that the quantum meruit award should attach to Top Line's mechanic's lien and have priority over USB's deed of trust.

A. Mutual Waiver of Written Change Order Requirement

USB points out that the parties agreed on a fixed price and agreed that written change orders were the sole method for increasing that fixed price. Because there were no written change orders modifying the agreed price in the written contract, USB argues that the mechanic's lien statute limits Top Line's lien claim to the unpaid balance of the written fixed price contract. USB assigns error to the trial court's finding that Top Line and Bovenkamp mutually waived the written change order requirement.[3]

Waiver is the voluntary and intentional relinquishment of a known right. River House Dev., Inc. v. Integrus Architecture, PS, 167 Wn. App. 221, 237, 272 P.3d 289 (2012). A contract condition requiring that extra work be approved in writing may be waived by the parties' conduct. Am. Sheet Metal Works, Inc. v. Haynes, 67 Wn.2d 153, 158-59, 407 P.2d 429 (1965). Such a waiver can be shown by evidence that the owner authorized, permitted, and/or directed the contractor to perform the work in question. Id. at 159; CKP, Inc. v. GRS Constr. Co., 63 Wn. App. 601, 619, 821 P.2d 63 (1991).

When the trial court enters findings of fact and conclusions of law, our review is limited to determining if the findings of fact are supported by substantial evidence and if

---

[3] USB argues that the trial court erred in reversing its initial verdict based on contract principles such as material breach and waiver, because contract principles are inapplicable to equity, and the trial court based its quantum meruit award on equity. This argument has no merit. Quantum meruit recovery falls under a contract implied in fact theory. Young v. Young, 164 Wn.2d 477, 485 n.4, 191 P.3d 1258 (2008).

the findings of fact support the conclusions of law. Douglas v. Visser, 173 Wn. App. 823, 829, 295 P.3d 800 (2013). Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the declared premise. Id. We review all reasonable inferences in the light most favorable to the prevailing party. Jensen v. Lake Jane Estates, 165 Wn. App. 100, 104, 267 P.3d 435 (2011). Though the trier of fact is free to believe or disbelieve any evidence presented at trial, we do not hear or weigh evidence, find facts, or substitute our opinions for those of the trier of fact. Id. at 105. Unchallenged findings of fact are verities on appeal. Id.

The following findings of fact (FF) and conclusions of law (CL) are relevant here:

> [FF 29 (unchallenged).] During the course of construction, there were unforeseen modifications and changes to the plans and specifications of the prototype residence that were requested of Bovenkamp and performed by Top Line, which consisted of extra work.

> [FF 30 (unchallenged).] Top Line and Bovenkamp usually discussed such changes, sometimes but not always the added costs associated with such changes and Top Line performed such changes. This extra work increased the cost of materials and labor incurred by Top Line in excess of the February 15, 2008 estimate or Contract Sum. Written and signed change orders, as required by the Contract, were not prepared or executed.

> [CL 10 (challenged).] The Contract had provisions for written change orders, but Bovenkamp and Top Line mutually waived the requirement for written change orders,

> [CL 12 (unchallenged).] Top Line has established by a preponderance of the evidence that Bovenkamp requested additions that were not within the contemplation of the parties, and the changes required extra work and materials and have caused a substantial loss to the [sic] Top Line, in the total amount of $79,731.15. The changes were incorporated into the prototype residence on the Property and Bovenkamp has enjoyed the use of such changes. Top Line is awarded these changes in quantum meruit.

USB does not assign error to FF 29 or FF 30, both of which amply support the trial court's conclusion that Top Line and Bovenkamp waived the change order provision. These findings are also supported by substantial evidence in the record. Bovenkamp testified that he agreed to changes done to the project. He acknowledged that there were no written change orders for this extra work. Bovenkamp further admitted that he and Top Line did not use written change orders, "because we were eager to get the job done."

The trial court's conclusion regarding waiver is supported by Washington case law. In CKP, the parties agreed to a fixed price contract requiring written change orders. 63 Wn. App. at 605. Over the course of the construction project, however, the contractor performed extra work at the owner's request before written change orders were issued. Id. When the owner refused to pay, the contractor filed a mechanic's lien for the contract price plus extra work performed in excess of the contract price. Id. at 605, 617. The trial court entered judgment for the contract price plus the cost of extra work and enforced the lien for that full amount. Id. at 606-07.

The appellate court held that the parties mutually waived the written change order requirement through their actions. Id. at 613. The court then concluded,

> The extra work . . . was not reduced to written contract modifications executed by both parties, but rather was proved by testimony, job diaries, and other such documents. It therefore falls into the category described in Modern Builders, Inc.[ of Tacoma] v. Manke, [27 Wn. App. 86, 88-89, 615 P.2d 1332 (1980),] that is, extra work arising outside and independent of the contract for which [the contractor] may recover costs plus a reasonable profit in quantum meruit.

Id. at 617. The appellate court upheld foreclosure of the mechanic's lien for the original contract price, plus the amounts recoverable in quantum meruit. See id. The court

reversed only the trial court's award of prejudgment interest on unliquidated sums awarded in quantum meruit. Id.

Therefore, where contracting parties mutually waive a written change order requirement and agree to extra work, the reasonable cost of that extra work is recoverable in quantum meruit. Such is the case here.

B. No Material Breach of the Loan Procedures Agreement

USB argues that even if Top Line and Bovenkamp waived the change order provision in their construction contract, USB did not waive its right under the LPA to enforce the change order requirement and did not consent to the extra work. USB insists that it is entitled to enforce the unambiguous change order provision, because Bovenkamp assigned his rights under the contract to USB.[4]

The trial court made the following relevant findings and conclusions:

[FF 20 (unchallenged).] The fixed price contract was provided to US Bank that was executed by Bovenkamp and Top Line ("Contract") was in the amount of $845,286.80. US Bank approved a construction loan for Bovenkamp in the amount of $995,000.000.

[FF 22 (challenged).] Top Line, U.S Bank and Bovenkamp signed a residential construction loan procedures assignment and consent

---

[4] In a cross appeal, Top Line argues that the trial court erred in granting USB standing to dispute the amount owed between Bovenkamp and Top Line. We disagree. USB contests the priority of Top Line's quantum meruit award, which goes to the heart of USB's legal rights as a party with a recorded security interest. Moreover, the LPA assigned Bovenkamp's rights to USB, enabling USB to argue that Top Line breached the construction contract. Old Nat'l Bank of Wash. v. Arneson, 54 Wn. App. 717, 723, 776 P.2d 145 (1989) (contract rights are assignable in Washington). In disputing this assignment, Top Line ignores the distinction between assignment of contract rights and assumption of contract obligations. 25 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: CONTRACT LAW AND PRACTICE § 13.8, at 320 (2d ed. 2007). Assignment was automatic under the LPA. USB needed to notify Top Line only when it assumed Bovenkamp's contract obligations, not when it asserted Bovenkamp's contract rights.

agreement provided by US Bank on June 5, 2008 ("Assignment and Consent Agreement"), which required, among other things, that Top Line and Bovenkamp execute a written construction contract and written change orders for any additional work requiring additional funds. Said agreement provides in paragraph 16 that the final draw may include the amounts represented by change orders "if approved by the Lender." Trial Exhibit 38. The purpose of the clause requiring Top Line to submit change orders to US Bank for approval was to protect the bank from having the cost of construction exceed the amount of the construction loan. This purpose is evident from the language in the loan agreement which would require Bovenkamp to deposit any additional sums required by change orders with the bank should the change orders result in a construction cost in excess of the loan amount.

[FF 23 (challenged).] Plaintiff's trial exhibit P-28 is an e-mail communication from Bovenkamp to Top Line's president dated April 14, 2009. In addressing the final draw, Mr. Bovenkamp stated, "Of course the bank will have to review and approve the cost overruns and will then issue the final draw at closing." Mr. Bovenkamp's trial testimony, at notes of testimony pages 233 and 236, is consistent with the provision of the residential construction loan procedures assignment and consent agreement that change orders were subject to the bank's approval before disbursing loan proceeds. Plaintiff introduced no documentation, testimony or other evidence that Top Line disputed Bovenkamp's statement, or the reference in paragraph 16 of the assignment and consent agreement, that change orders were subject to the review and approval of USB before disbursals for such amounts were made by the bank.

[FF 33 (challenged).] Top Line did not calculate or have any input in the draw requests submitted to US Bank. Change orders were not submitted to the bank by Top Line, but the original fixed price contract amount plus the value of all changes to the contract made by Bovenkamp never exceeded the amount the bank had agreed to lend Bovenkamp.

[FF 40 (unchallenged).] In May 2009, because the last invoice from Top Line amounted to $111,085.29, which exceeded the estimate in the Contract by $85,507.31, representing the additions requested by Bovenkamp, Top Line provided Bovenkamp and US Bank a list of the changes that occurred during the course of construction which allegedly increased the cost of the project, but did not include, as requested, a financial accounting with numerical value associated with these changes.

[FF 41 (unchallenged).] US Bank received the list of changes but requested that Top Line work through Bovenkamp since US Bank could

do nothing about any dispute Top Line and Bovenkamp were having about cost overruns.

[CL 11 (challenged).] US Bank did not waive the written change order requirement contained in the construction contract or in the assignment and consent agreement executed by Top Line, Bovenkamp and USB. But had change orders been submitted to US Bank as agreed, the bank would have no right to either object to the change orders or require that Bovenkamp deposit additional funds with the bank since the total amount owed to Top Line, including change orders never exceeded the loan commitment made by US Bank to Bovenkamp. Since US Bank would have had neither of those rights, the fact that the change orders were not submitted to the bank, while a technical breach of the parties['] contract, was wholly immaterial.

[CL 14 (unchallenged).] Since US Bank was presented a fixed price contract, and since the Consent and Assignment Agreement specified that US Bank is required to be notified of changes, it was the intent of US Bank, Bovenkamp and Top Line, to insure that if additional funds were required by change orders, US Bank would be notified and Bovenkamp would be required to deposit such funds in excess of the loan amount.

(Emphasis added.) USB argues that the trial court effectively rewrote the contract's change order provision so it was triggered only after the changes exceeded the total potential loan commitment.

Extrinsic evidence is admissible as to the entire circumstances under which the contract was made, as an aid in ascertaining the parties' intent.[5] Berg v. Hudesman, 115 Wn.2d 657, 667, 801 P.2d 222 (1990). Therefore, considering the LPA, as well as the parties' conduct and communications, is appropriate. Id.; see also Rimov v. Schultz, 162 Wn. App. 274, 283 & n.7, 253 P.3d 462 (2011). A material breach is one that substantially defeats a primary function of the contract. 224 Westlake, LLC v. Engstrom

---

[5] The trial court did not, as USB claims, need to find that the contract was ambiguous before considering extrinsic evidence.

Props., LLC, 169 Wn. App. 700, 724, 281 P.3d 693 (2012). The materiality of a breach is a question of fact. Id.

Paragraph 6 of the LPA specifies, "Funds in excess of the loan amount needed to complete construction are to be deposited with the Lender at loan closing as equity funds." Paragraph 9 further states, "If change orders occur during the course of construction, requiring additional funds, the Lender must be notified and those monies deposited with Lender into your construction escrow account." This clause does not require notice under all circumstances, but rather when change orders require additional funds. These paragraphs indicate that USB was concerned about cost overruns exceeding the loan amount ($995,000), not extra work exceeding the contract price ($845,286.80). And, nowhere does the LPA enable USB to approve or veto change orders within the loan amount. These provisions of the LPA are sufficient to support the trial court's finding and conclusion that the purpose of USB requiring change orders was to protect it from cost overruns exceeding the loan amount.

USB's communications with Top Line provide further evidence that USB did not perceive cost overruns below the loan amount to be its concern. In a May 26, 2009 e-mail, USB told Top Line, "I really would prefer that you work through Fred, there is nothing I can do about the dispute you are having about cost overruns." To which Top Line replied, "Fred sent me a message that I need to get you the final inspection checklist and the final bill. If you don't need those items from me then I guess I don't need to see you." Then USB acknowledged, "What I need is a copy of occupancy certificate. If you could fax that to me then we have all we need to finish." This

correspondence indicates that even if Bovenkamp or Top Line submitted change orders to USB, USB believed it could or would do nothing about it.

The trial court correctly concluded that even if change orders were presented to USB, it had no right to object or require Bovenkamp to deposit additional funds. The primary function of the contract was to ensure that USB's interest was secured if cost overruns exceeded the loan amount. Therefore, Bovenkamp's and Top Line's breach was not material, because it did not substantially defeat a primary function of the contract.

## C. Quantum Meruit

Quantum meruit recovery is proper when there

> "is an <u>agreement</u> depending for its existence on some act or conduct of the party sought to be charged and arising by implication from circumstances which, according to common understanding, show a <u>mutual intention on the part of the parties to contract with each other</u>. The services must be rendered under such circumstances as to indicate that the <u>person rendering them expected to be paid therefor, and that the recipient expected, or should have expected, to pay for them</u>."

<u>Young v. Young</u>, 164 Wn.2d 477, 485-86, 191 P.3d 1258 (2008) (emphasis added) (quoting <u>Johnson v. Nasi</u>, 50 Wn.2d 87, 91, 309 P.2d 380 (1957)).

Top Line's quantum meruit recovery and lien claim relies on well-established case law. In <u>Manke</u>, the contractor gave a fixed bid for a remodeling job. 27 Wn. App. at 88. Shortly after commencing work, it became clear that conditions required significant extra work. <u>Id.</u> The owner also requested many changes from the original plans. <u>Id.</u> After completing the job, the contractor submitted a bill for approximately twice the original bid. <u>Id.</u> at 90. The owner admitted that he orally authorized the extra work, but maintained that neither party contemplated such a big price increase. <u>Id.</u> The

appellate court held that the contract was not abandoned, but the costs of extra work agreed to by the parties plus a reasonable profit may be recovered by the performing party in quantum meruit, in addition to the contract price. Id. at 93, 95. The contractor was therefore entitled to recover on its lien for the amount of the contract price plus the proven costs of extra work.[6] Id. at 96

Likewise, in CKP, the contractor performed extra work at the owner's request before written change orders were issued. 63 Wn. App. at 605. The appellate court held that the parties mutually waived the change order requirement, so the extra work requested by the owner was recoverable. See id. at 613, 617. Those items for which a price was agreed or a method of computation agreed were recoverable as contract modifications. Id. at 617. Those items for which no cost was agreed to were recoverable in quantum meruit. Id. Both types of recovery were secured by the contractor's mechanic's lien. See id. at 606-07, 617.

Here, the trial court found that Bovenkamp orally requested work in addition to the original contract, sometimes agreeing upon the price and sometimes not. These findings are uncontested. The amount is not disputed. The case law supports the conclusion that Top Line was entitled to a judgment for this extra work, some based on

---

[6] By contrast, in Colorado Structures, Inc. v. Blue Mountain Plaza, LLC, the contractor performed soil testing that the owner never requested. 159 Wn. App. 654, 664-65, 246 P.3d 835 (2011). In addition, the contractor performed soil testing when the parties had no contract in place. Id. at 664. The soil testing did not constitute an improvement upon the land, and it had not been requested by the owner. Id. at 662, 654. Therefore, it did not meet the statutory lien requirements of RCW 60.04.021 and the cost of soil testing did not attach to the contractor's construction liens. Id. at 663, 665.

the agreed price, some in quantum meruit.[7] While these cases allowed a mechanic's lien for the recovery in quantum meruit, they did not directly analyze the prior mechanic's lien statute in effect at the time.

### D. Mechanic's Lien Statute

When interpreting a statute, we first look to its plain language. Estate of Haselwood v. Bremerton Ice Arena, Inc., 166 Wn.2d 489, 498, 210 P.3d 308 (2009). Absent ambiguity or a statutory definition, we give the words in a statute their common and ordinary meaning. Id. If the statute remains subject to multiple interpretations after analyzing the plain language, it is ambiguous. Id. A statute is not ambiguous merely because different interpretations are conceivable. Id. If a statute is susceptible to more than one reasonable interpretation, then a court may resort to statutory construction, legislative history, and relevant case law to discern legislative intent. Id.

Mechanic's liens are creatures of statute, in derogation of the common law. Id. They therefore must be strictly construed to determine whether a lien attaches. Id. But, if we determine that a party's lien is covered by chapter 60.04 RCW, then we liberally construe the statute to provide security for all parties intended to be protected by its provisions. Id.; see also RCW 60.04.900.

RCW 60.04.021 provides in relevant part:

> [A]ny person furnishing labor, professional services, materials, or equipment for the improvement of real property shall have a lien upon the improvement for the contract price of labor, professional services,

---

[7] The trial court refers to the entire award for extra work as quantum meruit. The portion of extra work at an agreed price was more properly a contract modification. Only the portion of extra work for which a price was not agreed is subject to recovery in quantum meruit. This mischaracterization has no effect on the result here.

16

materials, or equipment furnished at the instance of the owner, or the agent or construction agent of the owner.[8]

(Emphasis added.)

There is no dispute that Top Line furnished labor, professional services, materials, or equipment within the scope of the statute. They were clearly furnished for improvement of real property. They were all furnished at the instance of the owner,[9] some pursuant to the initial written contract and some pursuant to later oral requests for changes. These satisfy the requisites for the lien to attach.

The amount of the lien is determined by the definition of contract price:

> "Contract price" means the amount agreed upon by the contracting parties, or if no amount is agreed upon, then the customary and reasonable charge therefor.

RCW 60.04.011(2) (LAWS OF 1991, ch. 281, § 1).

What is in dispute is whether any amount awarded for extra work is part of the contract price for purposes of the mechanic's lien statute. The trial court found that the parties agreed in writing on a fixed price and on a procedure for increasing that price. USB argues that, because the written change order procedure was never used, the original agreed price did not increase. And, USB contends, because there was an amount agreed to by the parties, the "if no amount is agreed upon" clause of the

---

[8] This section was enacted in 1991 in a rewrite of the lien statute. LAWS OF 1991, ch. 281, § 2. The words "contract price" were not in the prior version of the mechanic's lien statute, enacted in 1975. See former RCW 60.04.010, .040 (1975), repealed by LAWS OF 1991, ch. 281, § 31.

[9] The ordinary meaning of "instance" is "instigation, suggestion, [or] request." WEBSTER'S THIRD INTERNATIONAL DICTIONARY 1171 (2002). This language is not ambiguous. It does not require a written request versus oral request or a combination of the two. Nor does it require that only a single request, rather than a series, may give rise to the lien. We will not read words into the statute that are not there. In re Pers. Restraint of Bovan, 157 Wn. App. 588, 599, 238 P.3d 528 (2010).

statutory definition of contract price is never triggered. RCW 60.04.011(2). Therefore, USB argues, the quantum meruit award is neither part of the contract price nor covered by the lien.

This argument interprets the "or" in the definition of contract price, id., as "either, but not both." So, under USB's theory, the lien for an entire project must be based solely on an agreement to price, or solely based on the customary and reasonable charge language. Literally applied, a clause in a construction contract to pay the contractor $500 to rent his bulldozer to clear a lot would preclude the contractor from a lien under a time and materials clause in the same contract for thousands of dollars spent constructing a building on the lot. This result is absurd. Such a reading is inconsistent with the requirement that once we determine that a party's lien is covered by chapter 60.04 RCW, then we liberally construe the statute to provide security for all parties intended to be protected by its provisions. Haselwood, 166 Wn.2d at 498. It is not a reasonable interpretation of the statute.

The mechanic's lien is for the aggregate value of labor, professional services, materials, and equipment furnished, as measured by contract price. The contract price of any component of the lien is valued one of two ways: at the agreed price or, if no agreed price, at the reasonable and customary charge. How one component is valued does not affect another. The addition of the definition of contract price to the statute merely codified the treatment recognized under prior case law.

The trial court properly applied the contract price definition. It used the agreed price for agreed extras and the reasonable value for extras where price was not agreed.

18

The trial court properly aggregated these amounts with the unpaid balance of the original contract in Top Line's mechanic's lien. All of the work and materials were furnished for improvement of real property at the instance of the owner. They are clearly within the scope of the mechanic's lien statute. We therefore affirm the trial court's award and the lien in favor of Top Line, as having priority over the USB lien.

II.    Top Line's Motion to Amend Its Complaint

USB argues that the trial court should not have permitted Top Line to amend its complaint to add a quantum meruit claim, because it adversely affected USB's rights under RCW 60.04.091(2). RCW 60.04.091(2) provides, "Where an action to foreclose the lien has been commenced such notice of claim of lien may be amended as pleadings may be by order of the court insofar as the interests of third parties are not adversely affected by such amendment." We review a trial court's decision to allow a party to amend pleadings for abuse of discretion. CKP, 63 Wn. App. at 610.

On June 9, 2009, Top Line filed an amended mechanic's lien for $111,085.29, which included the amount it later recovered in quantum meruit. Top Line's original complaint, filed on January 6, 2010, likewise requested a $111.085.24 judgment. Top Line did not thereafter move to amend its mechanic's lien. Rather, Top Line's amended complaint simply asserted an alternative cause of action (quantum meruit) to recover the full lien amount already filed. RCW 60.04.091(2) is therefore not triggered.

Further, even if it had been triggered, USB was not adversely affected. USB had notice from Top Line's amended mechanic's lien and original complaint that Top Line's entire lien amount may have priority. See CKP, 63 Wn. App. at 610 (holding that

19

secured lender's interests were not adversely affected when the trial court amended a mechanic's lien at trial, because lender had notice that the lien amount could increase). The trial court did not abuse its discretion in allowing Top Line to amend its complaint to add a claim for quantum meruit in support of foreclosure of the existing statutory lien.

III.    Equitable Estoppel

USB argues that Top Line should be estopped from recovering on any claims against USB, because Top Line told the court that it created a written contract for the sole purpose of deceiving USB into financing the project.  Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.  Townsend v. Quadrant Corp., 173 Wn.2d 451, 461, 268 P.3d 917 (2012).  However, the trial court found that Top Line and Bovenkamp never executed a cost-plus contract, as Top Line claimed, but were rather bound by the fixed price contract.  Because of this adverse finding, Top Line did not benefit from a cost-plus contract.  It gained nothing inequitably that needs to be stripped away.

Moreover, a party with unclean hands may not assert equitable estoppel.  See Retail Clerks Health & Welfare Trust Funds v. Shopland Supermarket, Inc., 96 Wn.2d 939, 949, 640 P.2d 1051 (1982).  USB failed to follow some of its own loan procedures in the LPA, but now attempts to enforce other provisions of the contract to its benefit. For instance, the LPA specified, "Construction cannot begin until after the loan closes and our mortgage is of record and/or lien priority has been established." But, USB knew that construction was already underway when Bovenkamp secured the loan.  Likewise, when presented with a list of changes, USB told Top Line to work directly with

20

Bovenkamp, because it could do nothing about cost overruns. This conflicts with USB's later assertion that Top Line and Bovenkamp needed to seek USB's approval for all extra work. Because USB attempts to enforce provisions of the LPA and fixed price contract while skirting others, equitable estoppel is not an available remedy.

## IV. Attorney Fees

Top Line requests attorney fees pursuant to RCW 60.04.181, the written contract, and RAP 18.1. RCW 60.04.181 provides for an award of attorney fees and costs to the prevailing party in securing a mechanic's lien, and "[s]uch costs shall have the priority of the class of lien to which they are related." As the prevailing party, Top Line is entitled to its reasonable attorney fees on appeal.

We affirm.

WE CONCUR: