# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| In the Matter of the<br>RICHARD C. SWEEZEY TRUST OF 1990 ) ) ) ) ) ) ) ) ) | No. 73209-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: May 16, 2016 |

APPELWICK, J. — The Estate appeals the dismissal on summary judgment of its petition for a declaration of rights under a TEDRA Agreement. Under the terms of a trust, Rick was to receive a portion of the trust's remainder if he survived his mother. Rick predeceased his mother. Under the terms of the TEDRA agreement, upon his mother's death, before distribution of the trust assets, certain payments were to be made to equalize for amounts previously taken by other residual beneficiaries. The Estate asserts that it is entitled to a payment from Trust assets, because the TEDRA Agreement amended the survivorship requirement as to a portion of the trust assets. We affirm.

2016 MAY 16 AM 10: 06
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
FILED

FACTS

Richard C. Sweezey (Dick) was married to June[1] Sweezey. Together, Dick and June had four sons: Richard H. Sweezey (Rick), Paul Sweezey, David Sweezey, and Gary Sweezey. Rick married Rae Ann Engdahl in 1985. Engdahl had two children from a previous marriage. Rick never adopted Engdahl's children.

In 1990, Dick established the Richard C. Sweezey Trust of 1990 (Trust). The Trust corpus consisted primarily of interests in closely held corporations. Dick established the Trust for his benefit during his lifetime and for June's benefit after his death.[2] Specifically, the Trust allocated the property as follows:

> 3.4 Balance of Property. Trustees shall allocate the rest of Trustor's estate as follows:
>
> (a) If Trustor's wife is then living, Trustees shall distribute the balance of the trust property to the Trustees of the Trust for Wife under Article 4.
>
> (b) If Trustor's wife is not then living, Trustees shall distribute all of the trust property in equal shares as follows:
>
> (i) one share to each son of Trustor who is then living; . . . and
>
> (ii) one share by right of representation to the descendants then living of any of Trustor's sons who are deceased. . . .

Therefore, under the terms of the trust, if a son predeceased June, that son's share would go to his descendants. Dick died on July 23, 1992. The Trust became

---

[1] We refer to the parties by their first names for the sake of clarity. No disrespect is intended.

[2] The 1990 Trust provided that after Dick died and after other specific requests the remainder of the assets were to be held in a qualified terminable interest property Trust (QTIP). The QTIP and the Richard C. Sweezy Trust of 1990 are collectively referred to as the Trust.

irrevocable upon Dick's death. At that point, pursuant to the Trust, specific distributions were made to Rick, David, Paul, and a trust was created for Gary and his family (Gary Family Trust). The remainder of the Trust assets funded a trust for June's benefit.

Rick, David, and Paul served as successor co-trustees of the Trust.[3] In November 2004, Rick and David, as co-trustees of the Trust, June, as co-trustee of the Gary Family Trust, and Paul, as co-trustee of both the Trust and the Gary Family Trust, executed a "Joint Action and Consent of the Co-Trustees" (Joint Action). The Joint Action delegated day-to-day affairs of the Trust to a trust administrator. The co-trustees first designated David as the administrator. Sometime shortly after the Joint Action, the co-trustees verbally agreed to substitute Paul as the Trust administrator. The Joint Action also appointed David, Paul, and Rick to corporate executive positions at companies owned by the Trust.

On January 7, 2009, June filed a petition under the Trust and Estate Dispute Resolution Act (TEDRA)[4] seeking removal and replacement of Rick, David, and Paul as the co-trustees. She alleged that the co-trustees breached their fiduciary duties, unjustly enriched themselves, and converted trust assets. The petition alleged that since the Joint Action, from 2004 to 2007, a majority of the co-trustees caused one of the Trust's companies, City Electric, to pay each of them excessive salaries and year-end bonuses. The petition noted that David and Paul do not work for or run the operations of City Electric and that Rick, who does work for and

---

[3] June and Paul served as co-trustees of the Gary Family Trust.
[4] RCW 11.96A.080

3

run City Electric,[5] consented to the removal of all three co-trustees in favor of a professional fiduciary. In addition to removal of the trustees, June's petition sought the return of the illegally obtained Trust property as soon as possible. The petition also requested that the co-trustees be restrained from taking any more Trust assets with the exception of reasonable wages received for work actually performed.

Prior to trial, on June 26, 2009, after two mediations, June, Paul, Rick, and David all signed a settlement agreement (TEDRA Agreement). Under the TEDRA Agreement, Rick, David, and Paul agreed to resign as co-trustees and appoint an independent corporate trustee. By signing the TEDRA Agreement, June released, waived, and discharged all claims against Rick, Paul, and David for breach of fiduciary duty.

Among many provisions, the TEDRA Agreement had an "Equalizing Distributions to Four Brothers" provision to ensure that at June's death the brothers' distributions would be equalized:

> Within three months of the three brothers signing this Agreement, Rick, David, and Paul will participate in an arbitration before Steve Scott to determine the amount of distributions that the brothers have received to date. Earned income shall not be considered a distribution. To the extent the distributions are unequal, they shall be equalized by the New Corporate Trustee upon June's death. . . . Once those equalizing distributions are made, the remaining assets would be divided between the four brothers equally.

---

[5] Rick was the Chief Executive Officer of City Electric.

The TEDRA Agreement also included a merger and inurement clause under the "Miscellaneous" section:

> 5.    This Agreement contains the entire agreement between and among the parties with regard to the matters set forth herein and is conclusive and binding on and inures to the benefit of the executors, administrators, personal representatives, heirs, successors and assigns of each.

On March 5, 2010, the parties amended the TEDRA Agreement. Among other things, the amendment noted that the parties all selected Union Bank, N.A. to serve as the new corporate trustee for the Trust. The superior court entered an order approving the TEDRA Agreement on March 24, 2010.

As mandated by the TEDRA Agreement, Rick, David, and Paul went to arbitration. After considering evidence and argument of counsel, the arbitrator determined the amount of advance distributions each brother received from the Trust. He found that Rick and Gary had received no advance distributions. But, he found that David received $829,490.94 and that Paul received $679,062.31. He made an award accordingly. The arbitrator also awarded Rick $35,929.39 in attorney fees and costs. The superior court entered an order confirming the arbitration awards on June 28, 2010.

In 2012, Rick disappeared and was declared deceased. Engdahl is the personal representative of Rick's Estate (the Estate). Then, June died on April 21, 2014. June's death triggered the final distribution of Trust assets. But, before the assets were distributed, Union Bank, the corporate trustee, petitioned to resign as trustee. On June 18, the Estate filed an opposition to Union Bank's petition, because the Estate did not want David and Paul to serve as Union Bank's

5

replacement. The Estate noted that it was a creditor of the Trust, because the Trust was obligated to pay it the equalizing payments under the TEDRA Agreement. David and Paul responded, indicating that they agreed to Union Bank's resignation, but they denied the Trust's obligation to make an equalizing payment to the Estate. They argued, among other things, that the Estate is not a creditor and has no claim. They asserted that neither the TEDRA Agreement nor the arbitration award changed the terms of the Trust that require a beneficiary of the Trust to survive June in order to claim anything under the Trust.

On July 1, 2014, the court entered an order appointing David and Paul as co-trustees. But, the trial court required that they post a bond or secure a deed of trust for $1,000,000 on the Trust property until the Estate resolved its potential claim against it. The trial court's order also authorized Union Bank to resign as trustee of the Gary Family Trust.[6] On July 29, 2014, as required by the court's order, David and Paul executed a deed of trust in favor of Rick's Estate secured by some of the Trust's real property. .

On August 1, 2014, the Estate, filed a petition for declaration of rights under TEDRA Agreement and judgment. The Estate argued that Rick's interest in the TEDRA Agreement passed to his Estate. And, it noted that the TEDRA Agreement created an absolute obligation for the Trust to pay the equalizing payments upon June's death to Rick, Gary, and their heirs, and then distribute the remainder. David and Paul, on behalf of the Trust, and Vranizan, on behalf of the Gary Family Trust (collectively "respondents"), separately opposed the Estate's petition.

---

[6] It named Michael Vranizan as the successor trustee.

On September 18, 2014, the matter was certified for trial. On January 23, 2015, the Estate moved for summary judgment. That same day, David and Paul also filed a motion for summary judgment on behalf of the Trust, arguing that the TEDRA Agreement did not destroy the survivorship condition—that a son survive June in order to collect—under the Trust. They argued that because Rick predeceased June, according to the language of the Trust, only his "descendants" were entitled to collect. And, because Rick never adopted Engdahl's two children, Rick had no descendants. On February 9, 2015, the Gary Family Trust filed a response, requesting that the court grant the Trust's motion for summary judgment and dismiss the Estate's petition.

On February 20, 2015, the parties went before the trial court on the cross-motions for summary judgment. The Estate conceded that Rick had no "descendants" under the terms of the Trust. But, it argued that this was a question of the interpretation of only the TEDRA Agreement, not the Trust. It argued that the language of the TEDRA Agreement mandated that the equalizing payments be made upon June's death. And, the Estate referenced the inurement clause in the TEDRA Agreement and claimed the right to receive the equalizing payments inures to the benefit of the party's estates, assigns, and heirs—words it claimed are materially different than "descendant" as stated in the Trust. The Estate also requested interest from the date of June's death and attorney fees.

After hearing argument from the Estate, the trial court granted the Trust's motion for summary judgment. The trial court stated:

> I think it is quite clear that you have to construe all of these agreements together -- the trust as well as the -- the TEDRA agreement, and it is clear that this related to a right that Rick had as an expectancy, which is as . . . if he survived his mother, June, and he didn't, and so there's nothing to be paid out here.

The trial court also noted that an award of attorney fees was appropriate for both the co-trustees and the Gary Family Trust to the extent that the fees were reasonable.

That same day, the trial court entered a written order granting the co-trustees' motion for summary judgment, dismissing the Estate's petition with prejudice, and denying its request for interest and attorney fees.[7] Because of its ruling, the trial court also ordered that the deed of trust securing the Estate's potential claim against the Trust be reconveyed.

In the order granting summary judgment, the trial court noted that attorney fees were appropriate. It reasoned this was so, because the Estate's petition caused the co-trustees to incur fees and costs in their defense of the Trust and its remainder beneficiaries from an unsuccessful and meritless attack. The court

---

[7] The written order stated that the court finds and concludes that section 3.4(b) of the Trust clearly and unambiguously requires a Trust beneficiary to have survived June or predeceased June, leaving lineal descendants in order to receive a distribution from the Trust upon June's death. It continued that the TEDRA Agreement and the arbitration award did not create a stand-alone payment obligation that was separate and distinct from the final Trust distribution. It concluded that the Estate had no interest in the Trust, because Rick did not survive June and died without leaving descendants.

8

awarded the Trust and the Gary Family Trust attorney fees and costs. The Estate appeals.

DISCUSSION

The Estate argues that the trial court erred when it granted summary judgment in favor of the Trust. The Estate urges this court to reverse the trial court, order summary judgment in its favor, replace the deed of trust with security for the Estate's claim, reverse the trial court's attorney fee award against it and award fees to the Estate, and award it fees on appeal.

This court reviews summary judgment orders de novo. Hadley v. Maxwell, 144 Wn.2d 306, 310-11, 27 P.3d 600 (2001). Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Peterson v. Groves, 111 Wn. App. 306, 310, 44 P.3d 894 (2002). When considering the evidence, the court draws reasonable inferences in the light most favorable to the nonmoving party. Schaaf v. Highfield, 127 Wn.2d 17, 21, 896 P.2d 665 (1995).

I.   The TEDRA Agreement

The Estate first argues that summary judgment was improper, because the TEDRA Agreement is an independent and enforceable contract that is not subject to the survivorship requirement of the Trust. It asserts that it is entitled to an equalizing distribution payment—$829,490.94—under the terms of the TEDRA Agreement.

TEDRA, provides for judicial and nonjudicial resolution to trust and estate disputes and related matters. RCW 11.96A.010. Under TEDRA, if all parties

9

agree to a resolution of a matter related to a trust or an estate, the matter can be settled by a written agreement signed by all parties. RCW 11.96A.220. If the parties file the written agreement with a court, it becomes the equivalent of a final court order binding all interested parties. RCW 11.96A.230(2).

The parties urge this court to adopt different interpretations of the TEDRA Agreement. When interpreting TEDRA agreements, this court applies general principles of contract law. See In re Estate of Bernard, 182 Wn. App. 692, 697, 718, 332 P.3d 484 , review denied, ___ Wn.2d ___, 339 P.3d 634 (2014) (applying principles of contract interpretation to interpreting TEDRA Agreements); see Condon v. Condon, 177 Wn.2d 150, 162, 298 P.3d 86 (2013) (applying principles of contract interpretation to interpreting settlement agreements.). In Washington, courts interpret contracts by attempting to determine the intent of the parties by focusing on their objective manifestations as expressed in the agreement. McGuire v. Bates, 169 Wn.2d 185, 189, 234 P.3d 205 (2010). Washington courts apply the "context rule" of contract interpretation in ascertaining the parties' intent. Roats v. Blakely Island Maint. Comm'n, Inc., 169 Wn. App. 263, 274, 279 P.3d 943 (2012). The context rule allows a court, while viewing the contract as a whole, to consider extrinsic evidence, such as the circumstances leading to the execution of the contract, the subsequent conduct of the parties and the reasonableness of the parties' respective interpretations.[8] Id.

---

[8] The Estate argues that the context rule does not apply at all in this case, because there is no specific contractual provision or term in the TEDRA Agreement requiring definition. Specifically, the Estate claims that respondents are improperly using the Trust—as extrinsic evidence under the context rule—to vary the plain and unqualified meaning of the equalizing distribution provision of the TEDRA

10

Both parties properly agree that the intent of the contracting parties is paramount in interpreting the TEDRA Agreement. But, they offer differing interpretations as to the parties' intent. The Estate asserts that the plain language of the equalizing distribution provision, the inurement clause, and the merger clause illustrates the intent of the parties.[9] It argues that the three provisions read together show that the parties intended to contract away the Trust's survivorship requirement as to the equalizing distribution payment provision of the TEDRA Agreement. And, that the merger clause specifically manifests an intent of the parties to have the TEDRA Agreement stand alone and not be overruled by the "inconsistent survivorship requirement" in the Trust. By contrast, respondents argue that the TEDRA Agreement clearly cannot be interpreted as a stand-alone contract, because its purpose was to resolve disputes arising under the Trust. And, they assert that neither the TEDRA Agreement's plain language nor its context show that the parties intended to modify the survivorship term of the Trust. They contend that the equalizing distribution provision reflects an intent to ensure

---

Agreement. But, in Washington, all contracts are interpreted under the context rule. Tjart v. Smith Barney, Inc., 107 Wn. App. 885, 895, 28 P.3d 823 (2001). This is true regardless of whether the court determines that the terms of the contract are ambiguous. Roats, 169 Wn. App. at 274. And, the parties need not identify a specific undefined term or word before this court may apply the context rule. See Top Line Builders, Inc. v. Bovenkamp, 179 Wn. App. 794, 806, 808-09, 320 P.3d 130 (2014) (considering extrinsic evidence to determine why an entire provision was included in a contract). That there is a merger clause in the TEDRA Agreement does not preclude this court from applying the context rule. See King v. Rice, 146 Wn. App. 662, 670-71, 191 P.3d 946 (2008).

[9] While the Estate objects to how the respondents are using the Trust as extrinsic evidence, at oral argument, the Estate conceded that we may consider the terms of the Trust in determining the parties' intent under the TEDRA Agreement.

equal distributions to only beneficiaries who satisfy the Trust's survivorship requirement.

The parties entered into the TEDRA Agreement in order to resolve issues concerning the management of the Trust as stated in June's petition. Under the terms of the Trust, June was the sole beneficiary of the Trust during her lifetime. The trustees were to invest and reinvest the principal of the Trust and pay June the income during her lifetime. Therefore, because advance distributions were withdrawn from the Trust, June forfeited any income that would have accrued on those Trust assets. June filed her petition, and requested that the court appoint a professional fiduciary, restrain the co-trustees from depleting any more Trust funds, and set a trial on the merits of her claims against the co-trustees.

The parties then entered into the TEDRA Agreement. The TEDRA Agreement notes that since November 2004, issues had arisen concerning the management of the Trust. The TEDRA Agreement then states why the parties entered into the agreement. They did so to resolve the disputes among them, facilitate the proper administration of the Trust, minimize the risks to each party inherent in the trial or arbitration of the issues raised in June's petition, and avoid further expenses of litigation. And, by agreeing to the equalizing distribution provision in the TEDRA Agreement, the parties agreed that any recipient of advance distributions would not be required to pay that money back to the Trust as June originally sought in her petition. Instead, upon June's death, initial distribution payments would be paid out of the Trust's assets to leave each brother

12

with an amount equal to the greatest advance distribution. Then, the equal residual division among the brothers would be made.

Based on the language of the TEDRA Agreement and the circumstances leading up to it, it is clear that the primary intent of the parties was to resolve June's claims and restore operation of the Trust on June's death to what it would have been had no advance distributions been taken.[10]

Still, the Estate argues that the language of the equalizing distribution provision creates an absolute obligation to payment. That provision states, "To the extent the distributions are unequal, they shall be equalized . . . upon June's death. . . . Once those equalizing distributions are made, the remaining trust assets would be divided between the four brothers equally." The Estate seizes on the word "shall" and argues that the obligation to equalize the payments to the beneficiaries is mandatory. In other words, the Estate is arguing that because of this mandatory language, Rick received a present, unconditional, and vested right to a payment upon entering into the TEDRA Agreement.[11] The Estate points to

---

[10] The Estate cites to Bernard, 182 Wn. App. 692, to support a claim that there is no requirement that a TEDRA agreement comply with a trustor's original intent. Here, because the parties to the TEDRA Agreement did not seek to modify the terms of the Trust, the parties did not contract around the trustor's original intent. Therefore, whether Bernard stands for the general proposition that the parties to a TEDRA Agreement may contract around the trustor's original intent is not at issue. But, we note that, in Bernard, which dealt with a revocable trust, unlike here, the original trustor was alive and was a participating party to both TEDRA agreements at issue. 182 Wn. App. at 699, 701, 724-25.

[11] While the Estate argues that the TEDRA Agreement modified the survivorship requirement of the Trust as to the equalizing distribution payments, it does not argue that it modified the survivorship requirement as to the remainder of the Trust assets. It argues that its argument is consistent with the language in the provision, because the equalizing distribution "shall be" made upon June's death, but the remainder Trust assets only "would be" divided. It argues that the

the language in the merger clause and argues that by including the merger clause in the TEDRA Agreement, the parties intended the TEDRA Agreement to stand alone and not be overruled by the Trust. The Estate also points to the inurement clause language as evidence that the parties' rights inure to the benefit of the parties' estates, heirs, and assigns. It argues that as a party to the TEDRA Agreement, Rick clearly had the right to receive the equalizing distribution payment while he lived and that the right inured to his estate.

But, June's lawsuit did not include any claims that involved modifying the terms of the Trust. The language of the TEDRA Agreement resolving her claims does not state an intent to modify the survivorship requirement of the Trust or to modify the scope of the Trust beneficiaries. It makes no mention of those issues in the substantive provisions. The Estate's argument is dependent upon inferences drawn from general provisions of the TEDRA Agreement to reach a conclusion that is inconsistent with the survivorship provision of the Trust. We reject the Estate's assertion that the three provisions of the TEDRA Agreement illustrate that the parties intended to provide Rick a present, unconditional, and vested right to an equalizing distribution while he lived.[12] His rights under the

---

difference in language, "would" versus "shall," makes the parties' intent to place the remainder distribution subject to a condition—the survivorship requirement—whereas it does not do so for the equalizing distribution payments. But, the provision states that the "remaining trust assets would be divided between the four brothers equally." (Emphasis added). That provision suggests that the parties to the TEDRA Agreement did not specifically contemplate what would happen if one of the brothers predeceased June. This language undercuts the argument that the intent of the parties was to waive the survivorship requirement of the Trust as to the equalizing distribution payments but not as to the remainder Trust assets.

[12] If the TEDRA Agreement did provide Rick a present, vested right to an equalizing distribution payment during his lifetime as the Estate contends, it would

14

TEDRA Agreement were tied to the terms of the Trust. Surviving June was a condition precedent to any distribution, including an advance to equalize what others may have received earlier. Therefore, that right could not have passed to his estate through the inurement clause.

We conclude that the TEDRA Agreement did not confer upon Rick or his Estate an absolute right or promise to an equalizing distribution payment notwithstanding the Trust's survivorship requirement.

Alternative Theories

The Estate then makes three alternative arguments, claiming that it is entitled to the equalizing distribution payment. Specifically, the Estate argues that it is entitled to the payment, because the TEDRA Agreement is an assignment of rights and because of the doctrines of promissory and equitable estoppel.

A. Assignment

First, the Estate argues that the TEDRA Agreement is an assignment by David and Paul to Rick and the Gary Family Trust. No particular words of art are required to create a valid and binding assignment. Carlile v. Harbour Homes, Inc., 147 Wn. App. 193, 208, 194 P.3d 280 (2008). Any language showing the owner's intent to transfer and invest property in the assignee is sufficient. Id.

The Estate argues that the TEDRA Agreement served as an assignment by June to Rick of her right to recover the Trust assets from David and Paul. It notes that the distributions David and Paul paid themselves were amounts that rightfully

---

not need to rely on the inurement clause to claim Rick's right. RCW 4.20.046, the survival statute, allows causes of action arising out of a contract to survive to the Estate.

should have been distributed to June. But, this is inconsistent with the claims June brought in her petition, which included claims against Rick. And, through her petition, June did not seek any personal distributions of Trust property or lost income, only that the money "illegally siphoned from the Trust[] be returned as soon as possible." Any equalizing distribution payment under the TEDRA Agreement was not to be made from June's interest or even from the money wrongfully taken by the others, but only from the Trust remainder. June had no interest in the remainder to assign. Moreover, June released any claims she had to the advance distributions. She could not assign what she had released. Therefore, we conclude that June did not intend to make an assignment of a personal right to recover the assets.

Second, the TEDRA Agreement did not require disgorgement of the advance distributions. Nor did it require anyone who was determined to have received an advance distribution to make an equalizing distribution payment to a brother who had not received a like amount. The TEDRA Agreement provided that the corporate trustee would make payments from the Trust to equalize the advance distributions. Once the equalizing distributions were made, the remaining Trust assets would be divided between the four brothers equally. The advance distributions were treated as charges against that brother's share of the Trust, not as an increase in that brother's interest in the Trust. The brothers who received the advance distributions did not assign any portion of their interest in the Trust to another brother. They merely agreed the others were entitled to receive advances in comparable amounts prior to distribution of the Trust remainder.

The Estate's assignment arguments are without merit.

## B. Promissory and Equitable Estoppel

Next, the Estate asserts that both the doctrines of promissory and equitable estoppel entitle it to an equalizing distribution payment. But, the Estate's arguments under both theories rely on the fact that the respondents made a "promise" to Rick that he would receive an equalizing distribution payment that was not kept. But, the right to Trust assets was contingent upon surviving June. The equalizing distribution payments were to occur only after June died. Because Rick predeceased June, he lost any right to equalizing distributions from the Trust. There was no longer any distribution rights to equalize. No promise was broken. We conclude that neither June nor any of the other parties to the TEDRA Agreement ever made a promise of equalizing distribution payments, independent of the Trust survivorship provisions. The estoppel arguments are without merit.

We hold that the trial court did not err when it granted summary judgment in favor of respondents and when it released the deed of trust securing the Estate's claim.

## II. Attorney Fees – Trial Court

The Estate argues that the trial court erred when it awarded attorney fees to respondents and denied its request for fees. It argues that the trial court applied the incorrect standard—the prevailing party standard—in awarding fees to respondents. It asserts that the trial court did not enter appropriate findings and conclusions to support the fee award. And, it claims that fees are unwarranted when a TEDRA case presents unique issues.

TEDRA, RCW 11.96A.150(1), grants courts great discretion in awarding attorney fees. In re the Estate of Fitzgerald, 172 Wn. App. 437, 453, 294 P.3d 720 (2012). It states:

(1) Either the superior court or any court on appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party: (a) From any party to the proceedings; (b) from the assets of the estate or trust involved in the proceedings; or (c) from any nonprobate asset that is the subject of the proceedings. The court may order the costs, including reasonable attorneys' fees, to be paid in such amount and in such manner as the court determines to be equitable. In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved.

RCW 11.96A.150(1). This statute allows a court to consider any relevant factor when determining whether to make a fee award, including whether a case presents novel or unique issues. In re Estate of Evans, 181 Wn. App. 436, 451, 326 P.3d 755 (2014). The statute does not limit fee awards to only the prevailing party. Id. This court reviews a trial court's award of fees under RCW 11.96A.150 for abuse of discretion. Id.

In its order granting summary judgment the trial court stated:

Under [TEDRA] (RCW 11.96A.150), this Court has discretionary authority to award costs, including reasonable attorneys' fees, to any party from any party to the proceedings, to be paid in such amount and in such manner as the Court determines equitable. The Court finds that the Estate's Petition caused the co-trustees to incur attorneys' fees and costs in their defense of the Trust and its remainder beneficiaries from an unsuccessful and meritless attack by the Estate of Richard H. Sweezey. The Court finds that it is equitable to AWARD the Trust its reasonable attorneys' fees and costs incurred, in an amount to be set by the Court in further proceedings, and that such attorneys' fees and costs should be paid by the Estate of Richard H. Sweezey or its distributees.

18

In the order awarding attorney fees to the Gary Family Trust, the trial court stated that this case did not involve claims that are particularly novel or legally challenging which would justify not making a fee award. Then, in the order awarding attorney fees and costs to the co-trustees of the Trust, the court stated that it rejected the Estate's petition in its entirety, finding it meritless.

The Estate argues that the trial court's oral ruling and written orders are insufficient to provide an equitable basis for a fee award under TEDRA. It first argues that when a court makes a fee award, the basis for and the calculation of the fee award should be supported by appropriate findings and conclusions. The trial court must enter findings of fact and conclusions of law supporting its decision to award fees. Deep Water Brewing, LLC v. Fairway Res., Ltd., 170 Wn. App. 1, 6, 282 P.3d 146 (2012). Where a trial court fails to create the appropriate record, remand for entry of proper findings and conclusions is the appropriate remedy. Id. But, if the trial court enters specific findings as to the basis for the award and the rationale underlying the court's conclusion that it was reasonable, this court is able to determine whether the trial court abused its discretion. See Bentzen v. Demmons, 68 Wn. App. 339, 350, 842 P.2d 1015 (1993).

Here, the Estate does not question the amount or calculation of the fee award, only the trial court's basis for the award. Although the trial court did not enter formal findings of fact and conclusions of law, the trial court provided the basis for its award. It stated that the Estate's petition was a meritless attack involving claims that were not novel or legally challenging. Therefore, we are able

to determine whether the trial court's fee award on this basis constituted an abuse of discretion.

The Estate's next argument is that the trial court improperly applied the prevailing party standard in awarding fees. But, the trial court noted that it was making its fee award under RCW 11.96A.150(1), and it acknowledged that it was applying an equitable standard. Although the trial court said that the Estate's claim was "unsuccessful," it also found that it was equitable for the Estate to reimburse the Trust and the Gary Family Trust for the fees they were forced to incur defending against the Estate's meritless attack. Therefore, the trial court did not apply the inappropriate prevailing party standard.

Next, the Estate argues that defending against a meritless attack is an insufficient basis for a fee award under TEDRA. At least one Washington appellate court has affirmed a fee award under TEDRA when the Estate was forced to incur attorney fees defending against a claim that it found was meritless. See Fitzgerald, 172 Wn. App. at 453-54 (finding a plainly time-barred claim meritless and affirming a fee award). Here, the trial court granted summary judgment against the Estate noting, "I think it's quite clear that you have to construe all of these agreements together." And, it later stated that the case did not involve claims that are particularly legally challenging. In other words, although the claim here was not clearly time-barred, like in Fitzgerald, the trial court found that the case was quite plainly meritless. Therefore, awarding attorney fees under TEDRA because a lawsuit is meritless does not necessarily constitute an abuse of discretion.

The Estate also argues that fees are unwarranted when a TEDRA case presents unique issues. It claims that if a party to a TEDRA petition raises a novel issue in good faith, it is an abuse of discretion to award fees against the party for not prevailing. Washington courts have concluded that where a case involves a unique issue under TEDRA, an award of fees is unwarranted. See, e.g., Bale v. Allison, 173 Wn. App. 435, 461, 294 P.3d 789 (2013) (finding fees unwarranted because case involved unique issue); In re Estate of Stover, 178 Wn. App. 550, 564, 315 P.3d 579 (2013) (denying appellate fees because the case involved a novel issue of statutory construction), review denied, 180 Wn.2d 1005, 321 P.3d 1206 (2014). But, here, the Estate fails to explain why the trial court abused its discretion in finding that this case did not involve a novel issue. Nor does it provide any authority indicating that whether the issue is novel is dispositive as opposed to only one of the factors that the trial court may consider under RCW 11.96A.150(1).[13]

We agree with the trial court that this case involved straightforward contract interpretation. And, the Estate has provided no argument or authority upon which to conclude that the trial court abused its discretion under TEDRA when it awarded the respondents attorney fees based on a lawsuit it deemed meritless.

The Estate also asserts that the trial court abused its discretion when it did not award it attorney fees below. The Estate argues that where all beneficiaries

---

[13] The Estate also argues that Washington courts typically award fees in TEDRA litigation against parties personally only upon a showing of misbehavior or violation of a statute. But, it cites to no authority to support the assertion that a party must have committed misconduct or violated a statute for a court to award fees against it.

are involved in the litigation and it ascertains and resolves doubtful rights of the parties, it is appropriate to award fees to all the parties. The Estate claims that because it brought a good faith claim with a reasonable basis, the trial court should have awarded it attorney fees regardless of how it decided the case. But, under the line of cases cited by the Estate—all will contests—generally the estate must be benefited if attorney fees are to be assessed against it. In re Estate of Black, 153 Wn.2d 152, 174, 102 P.3d 796 (2004). This same rule applies in litigation over trusts. See Barlett v. Betlach, 136 Wn. App. 8, 22, 146 P.3d 1235 (2006) ("Attorney fees may generally be awarded against a trust only where the litigation results in a substantial benefit to the trust."). Even if all parties were involved in the litigation, where the litigation was unsuccessful and primarily prosecuted for personal benefit, a benefit of the trust will rarely be found and the trial court does not abuse its discretion in denying attorney fees. In re Boris v. Korry Testamentary Marital Deduction Trust for Wife, 56 Wn. App. 749, 756, 785 P.2d 484 (1990); In re Estate of Ehlers, 80 Wn. App. 751, 764, 911 P.2d 1017 (1996). Therefore, because the Estate clearly brought its action for its benefit rather than the Trust's, we hold that the trial court did not abuse its discretion in denying the Estate's request for attorney fees.

III.    Attorney Fees – Appeal

Both the Estate and the respondents request attorney fees on appeal. A party may recover attorney fees and costs on appeal when granted by applicable law. RAP 18.1(a). TEDRA permits an award of attorney fees on appeal. See RCW 11.96A.150 ("Either the superior court or any court on appeal may, in its

22

discretion, order costs including reasonable attorneys' fees, to be awarded to any party . . . in such manner as the court determines to be equitable.").

Although the Estate's appeal involved straightforward contract interpretation and did not advance an argument about a novel issue of law, it was not frivolous. See In re Estate of Wright, 147 Wn. App. 674, 688, 196 P.3d 1075 (2008) (declining to award fees on appeal in TEDRA action because the issues appellant raised were not frivolous). And, both parties here willingly entered into the TEDRA Agreement with vague language that resulted in extended litigation. Therefore, both parties are responsible to some degree for this dispute. As such, we decline to exercise our equitable authority under the statute and deny both parties' requests for attorney fees on appeal.

We affirm.

Appelwick, J.

WE CONCUR:

Trickey, ACJ

Cox, J.